**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Dan Jack COMBS, Defendant-Appellant.**

**No. 17593.**

United States Court of Appeals
Sixth Circuit.

March 11, 1968.

---

3. United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964).

Ephraim London, New York City, for appellant, Benjamin Ira Gertz, Joseph J. Brecher, New York City, on the brief.

George I. Cline, U. S. Atty., Lexington, Ky., for appellee, G. Wix Unthank, Asst. U. S. Atty., Lexington, Ky., on the brief.

Before O'SULLIVAN and McCREE, Circuit Judges, and WEINMAN, District Judge.

O'SULLIVAN, Circuit Judge.

Dan Jack Combs, of the Kentucky bar, appeals his conviction of criminal contempt by the Honorable Bernard T. Moynahan, United States District Judge, sitting in the Eastern District of Kentucky, Pikeville. Combs was fined $100 and committed to jail until the fine be paid.[1] The alleged contempt was the introduction and use of a tape recorder in a proceeding to determine the qualifications of the District Judge to continue sitting in a condemnation case then pending in such District Court.

Judge Moynahan had presided at two trials of the condemnation case. In the first, appellant Combs' clients received a jury award of $52,300 for the property taken. Judge Moynahan set the verdict aside for error committed in the admission of certain evidence. At the second trial, the jury awarded appellant's clients $63,500. This verdict was set aside by Judge Moynahan as excessive. A new trial was ordered unless Combs' clients remitted all but $15,000 of the jury award. The remittitur was not made and the cause was set for a third trial. In anticipation thereof, appellant's clients made and signed an affidavit under 28 U. S.C. § 144 that Judge Moynahan had a personal bias or prejudice against them, and sought to have him disqualify himself from presiding at the coming third trial. Appended to the affidavit was the certification of Combs, as attorney of record, that the affidavit was made in good faith. It is fair to assume that he prepared or collaborated in the preparation of the affidavit.

The affidavit recited that Judge Moynahan had set aside the two aforementioned jury verdicts for the affiants, and alleged that he had excluded the testimony of the affiants' expert witnesses concerning the value of the condemned land; that he had discussed at length with the jury his own views of the value of the land, and that he had been extremely critical of the jury verdict in the second trial. Affiants also stated their refusal to make the remittitur called for by Judge Moynahan and concluded with the following several paragraphs, which we consider may well have precipitated a personal confrontation between the judge and appellant Combs:

"(f) Affiants further say that by reason of the Court's actions during each of these trials and his action and threatened action after the conclusion of same, he has exceeded his function and duties as a jurist and has taken on the role of advocate, expert witness, and has usurped the function of the jury and has by his action and threatened actions effectively denied affiants and their co-defendants their rights guaranteed by the Constitution of the United States of America and the Constitution of the Commonwealth of Kentucky, and right granted by KRS 177.-087.

"Affiants further say that His Honor has said in effect, 'I have seen the property, I know its value and use to which it could be put, notwithstanding what your witnesses say or what verdict a jury might render, you are not by reason of my knowledge of property values in your area and my knowledge of the property in question, entitled to any sum greater than $15,000.'

"Affiants further say that by reason of the bias and prejudice of Bernard

---

T. Moynahan, Jr., they can not receive a fair and impartial trial before him."

A hearing was set to consider the sufficiency and propriety of the affidavit charging the judge with bias and prejudice. To further portray the personal collision that developed betwen the judge and Combs, we set out some of the opening and closing colloquy of that hearing.

At one point, Judge Moynahan stated:

"The Court: It's most embarrassing to the Court and I say that I don't think the attorneys have used good faith. I think they have attempted to disqualify the Judge of the Court just because they disagree with the rulings of the Judge of the Court."

And in closing he said:

"The Court: * * * The Court has ruled. Your motion is overruled. A new trial is ordered * * *. I am not going to get in any further conversation with you in regard to this matter. The Court has ruled. Call the next case."

It was at this hearing that appellant, without asking permission to do so, and without advice of his intention to do so, brought in and used a tape recorder to record the proceedings. While it appears that the recorder itself and the microphone were placed on the counsel table, within the view of the District Judge, it is obvious that Judge Moynahan was unaware of Combs' plan to make his own recording of the proceeding. At the conclusion of the hearing, and as Combs was dismantling his equipment, the judge became aware of what had happened and inquired as follows: "Mr. Combs, do you have a recording device here in the courtroom?" Mr. Combs affirmed that he did and stated that his reason for using it was his desire to be able to have a transcript or "bystander's bill" to support the appeal that he felt he would have to take from a refusal of Judge Moynahan to recuse himself in the condemnation case. He emphasized the delays involved in obtaining transcripts from the official court reporter. To the court's further rhetorical inquiry, "Have you come into the

courtroom here with a recording device and surreptitiously recorded what the Court was saying and what you were saying here," Mr. Combs denied that his conduct was surreptitious.

The District Judge rejoined by directing the clerk to enter an order requiring Mr. Combs to appear at 9:00 o'clock on the coming Friday to show cause why he should not be adjudged in contempt for the use of the tape recorder and the filing of the affidavit of bias. He expressed his view that appellant's conduct was contemptuous, but stated he would recuse himself from sitting at the third trial of the condemnation case.

In addition to the above oral order to show cause, Judge Moynahan issued a written order two days later setting out two specifications or counts of the alleged contemptuous conduct as follows:

"(1) The filing of a certain affidavit of alleged disqualification of the undersigned Judge of the Court in the case of Prestonsburg-Paintsville Airport Board vs. S. N. Williams, et al, Civil Action No. 716, pending on the docket of this Court, the filing of a certificate of good faith as to the contents of said affidavit, the reassertion in open court of the contents thereof, which affidavit is couched in contemptuous and intemperate language and draws unwarranted and contemptuous conclusions as to the actions of the Court in ruling upon certain legal matters involved in said case.

"(2) In wilfully, surreptitiously, contemptuously, and without the knowledge of the Court bringing into the Court Room a recording device and recording the proceedings in the court wherein said attorney had moved the Court to vacate the bench in the hereinbefore referred to proceeding and in thereafter surreptitiously preparing to leave the court room with said recording device, said action being committed in violation of the Canons of Ethics of the American Bar Association and in violation of the proper decorum for an attorney; and being committed at a time when the proceedings in the court

were being recorded by the Official Court Reporter both in shorthand and by electronic recording device as provided by Title 28 U.S.C. 753b."

The show cause hearing was held the day following the issuance of the above written order. At its inception, Judge Moynahan disqualified himself, sua sponte, from hearing the charges contained in Count 1, i. e., those having to do with the filing of the affidavit of bias and the certificate of good faith appended thereto. The following reason was given:

> "It appears to the Court that * * * the charge contained and specified in Count 1 of the order, citing the respondents for contempt of court, refers to certain acts which are bottomed upon disrespect to the Court contained in a writing filed with the Court in a then pending proceeding and should properly be considered by another judge."

However, as to Count II, Judge Moynahan declined to similarly disqualify himself, though urged to do so by appellant's counsel, upon the view that the alleged contempt charged in Count II was committed in the presence of the Court, and therefore was subject to summary disposition under Section 42(a) of the Federal Rules of Criminal Procedure, which Section does *not* provide for disqualification of the Judge before whom the contempt is committed, as does Section (b) of Rule 42.[2] Judge Moynahan replied to appellant's counsel as follows:

> "The Court: Mr. London, the charge contained in Count 1 of the specification of charges refers to matters which were, in a sense, committed in the presence of the Court, in that they were in

a writing which was submitted to the Court, and under Rule 42 of the Federal Rules of Criminal Procedure, in the opinion of the Court, they should be heard by another Judge. However, the charge contained in Count 2 of the specification of charges refers to certain actions of Mr. Combs in surreptitiously bringing a recording device into the courtroom and impugns the dignity of the court. I feel that the Court is qualified to hear that matter. I think it could have been disposed of in a summary manner at the time without notice, but the Court felt that that was not advisable. And for that reason I issued the show cause order and directed that Mr. Combs appear here this morning. I believe under the rules it could have been decided forthwith and summarily at the time. The Court declines to disqualify himself as to the *charge contained in Count 2 of the specification of charges as to Mr. Combs.*"

By the literal language of Rule 42 a judge need not disqualify himself if the contempt charged falls under Section (a) of the Rule, even though the charge involves "disrespect to or criticism of a judge." However, decisions of the Supreme Court have narrowed the scope of summary disposition of contempt charges. Such decisions suggest the impropriety of a trial judge himself hearing the charges where "the contempt charged is entangled with the judge's personal feeling against the lawyer." Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954). Likewise, this Court, following the admonitions of the Supreme Court, ruled in United

---

2. Rule 42, in pertinent part, reads as follows:

"(a) *Summary Disposition.* A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the Court. * * * (b) *Disposition Upon Notice and Hearing.* A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The

notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. * * * If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. * * *"

States v. Bradt, 294 F.2d 879, 885 (6th Cir. 1961) that,

"In the present case, we find no pressing demand that the contempt proceeding be heard and disposed of immediately. We think that the controversy between the Judge and the appellants, having its roots in the telephone conversations of July 13, 1960, and involving allegations in the affidavit of disqualification, which the Judge considered as being untruthful statements about him, with unjustified and improper implications, included matters of a personal nature to the Judge which, under the particular circumstances make it advisable that the rule in the Cooke and Offutt cases, rather than the rule in the Sacher case, be applied, and that the contempt proceedings be heard by another judge."

We think the facts of the present case bring it within our ruling in the *Bradt* case. Here, as in that case, the incident for which the defendant was cited occurred in the actual presence of the District Judge. In the *Bradt* case the attorney left the court room after a verbal exchange with the presiding judge, contrary to the order of the judge for him to remain. Here appellant Combs introduced a recording device into the courtroom without giving prior notice or obtaining permission from the Court. In both instances the prelude to the incident which precipitated the contempt citation involved extremely strained personal feelings between attorney and judge. Each case involved an affidavit of bias which was felt by the involved district judge to contain unjustified and improper allegations regarding the performance of his judicial duties. In neither could the final event in an unfortunate chain of occurrences be realistically considered apart from what went before. We believe that notwithstanding that specification Two involved only the use of the recorder, the personal feelings engendered by the alleged attack on the judge's judicial integrity—the subject matter of specification One—would remain the climate of a hearing on specification Two and forbid the detachment that should characterize judicial action.

In the instance case, as noted above, Judge Moynahan himself recognized the impropriety of his hearing Count I of the contempt charge, relating to the affidavit of bias. We think the reasons which compelled him to disqualify himself from hearing Count I must apply also to Count II. In this regard we note the interesting statement made in the government's brief to us that:

"As a matter of fact the United States does not contend that the apparent activity of Mr. Combs was carried on in a furtive manner; it contends that such nonpermissive activity was so unpretentious that it would have gone completely unnoticed except for the exaggerated delay in disassembling the recorder at the conclusion of the hearing.

"It is submitted that this exaggerated delay was intentional and Mr. Combs wanted the court to then see the tape recorder. This impliedly informed the court that it may have its say but the recorder had a record of it and the court could guess as to when, where and how it would be used."

We read this as a suggestion that Mr. Combs' use of the recorder was a not so subtle suggestion to the judge that he had better behave himself, and that by his quite observable dismantling of his equipment while the judge was still on the bench, he was letting the judge know he was ready to promptly review him.[3] We need not express our view as to whether the use of the recorder was but a genteel means of affronting the judge. It is a fair inference that but for the bitter beginning of this entire transaction, Combs would not likely have used his tape recorder and neither would the District Judge have taken umbrage when he discovered it. Another view might be that had Mr. Combs' conduct been inno-

---

3. Combs urged that his reason for his use of the recorder was to obtain a prompt transcript, reciting previous delays that he had suffered in that regard.

cently motivated, he would likely have asked permission or told of his intention to use it.

We hold that the instant case, like the *Bradt* case, supra, should be governed by the considerations outlined in Offutt v. United States, supra, and Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767 (1925). In *Cooke* the Supreme Court said:

> "[A] judge called upon to act in a case of contempt by personal attack upon him, may without flinching from his duty, properly ask that one of his fellow judges take his place." 267 U.S. at 539, 45 S.Ct. at 396.

The law recognizes that judges, like all humans, react to what they consider personal affronts to their integrity or abilities. The Supreme Court stated in *Offutt*:

> "But judges also are human and may, in a human way, quite unwittingly identify offense to self with obstruction to law. Accordingly, this Court has deemed it important that district judges guard against this easy confusion by not sitting themselves in judgment upon misconduct of counsel where the contempt charged is entangled with the judge's personal feeling against the lawyer.
>
> "Of course personal attacks or innuendoes by a lawyer against a judge, with a view to provoking him, only aggravate what may be an obstruction to the trial. The vital point is that in sitting in judgment on such a misbehaving lawyer the judge should not himself give vent to personal spleen or respond to a personal grievance. These are subtle matters, for they concern the ingredients of what constitute justice. Therefore, justice must satisfy the appearance of justice." 348 U.S. at 14, 75 S.Ct. at 13.

Cf. Harris v. United States, 382 U.S. 162, 164–165, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965).

In remanding this case for trial before a different judge, we express no opinion on the merits of Judge Moynahan's findings. In the written judgment entered, he concluded, *inter alia*, that:

> "And it further appearing to the Court that said respondent has not been shown sufficient response to said paragraph (2) of said specification of charges; that said conduct was contemptuous in that it violated the standards of decorum for an attorney established by the Canons of Ethics of the American Bar Association, violated the spirit of the Rules of this Court in regard to the conduct of an attorney, violated the spirit and intention of Rule 53 of the Federal Rules of Criminal Procedure and was an act of disrespect practiced toward the Court by an attorney who was a Member of this Court * * *."

We adopt Judge Shackelford Miller's concluding language in United States v. Bradt, supra, 294 F.2d at 885, that

> "In making this ruling we are in no way passing on the merits of the issues presented or involved. Our present ruling is directed to the proper method for a hearing and determination of the charges against the appellants."

We consider, therefore, that it should be left to another judge—not an actor in the involved events—to make the determination whether Mr. Combs' conduct was but a mechanism artlessly employed by a careful practitioner [4] or a calculated and truculent gesture whereby to let the judge know he was under special surveillance.

The judgment is set aside and the cause remanded for hearing and disposition by a different judge. Such hearing will not require a jury trial.

4. There is no evidence that either Mr. Combs or any other lawyer at Pikeville, or elsewhere in the United States District Court for the Eastern District of Kentucky, had ever before found it necessary or helpful to use a tape recorder in a judicial proceeding where an official reporter was employed.