# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on June 20, 2013

## SAMUEL B. PHILLIPS v. SUSAN W. PHILLIPS

**Appeal from the Circuit Court for Hamilton County**
**No. 09D1023    Jacqueline S. Bolton, Judge**

---

**No. E2013-01433-COA-10B-CV - Filed July 8, 2013**

---

This is an interlocutory appeal as of right pursuant to Tennessee Supreme Court Rule 10B from the denial of a motion to recuse the Trial Court Judge from presiding over post-divorce contempt proceedings initiated by Susan W. Phillips ("Former Wife") against Samuel B. Phillips ("Former Husband").  Having reviewed Former Husband's Petition for Recusal Appeal pursuant to Rule 10B of the Rules of the Tennessee Supreme Court, and upon consideration of Former Wife's motion to dismiss the appeal, we deny Former Wife's motion to dismiss this appeal and affirm the Trial Court's denial of Former Husband's motion to recuse.

**Tenn. Sup. Ct. Rule 10B Interlocutory Appeal as of Right;**
**Judgment of the Circuit Court Affirmed**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY, and THOMAS R. FRIERSON, II, J.J., joined.

Sharon Greta Locklear, Chattanooga, Tennessee, for the appellant, Samuel B. Phillips.

Glenna M. Ramer, Chattanooga, Tennessee, for the appellee, Susan W. Phillips.

## OPINION

The parties were divorced in May of 2010.  During the course of their "extremely contentious and acrimonious" divorce proceedings, as Former Husband describes them, the Trial Court held Former Husband in contempt in July of 2009.  In finding Former Husband in contempt, the Trial Court stated on the record: "I must say I've rarely heard from a witness

who has less credibility than the husband in this case, and there's no doubt in my mind that he's in contempt of Court[.]"

In August of 2011, Former Wife served Former Husband with a new Petition for Contempt. Shortly before the scheduled hearing on the Petition for Contempt, Former Husband filed a motion to recuse the Trial Court Judge based upon an email Former Husband contends he "discovered" on or about April 10, 2013. This email purportedly was sent to Former Husband by Former Wife on or about September 1, 2010. The email, a copy of which was attached to the motion, stated in its entirety as follows:

You do know that your attorney is one of my dad's best friends don't you? Konvalinka may have gotten you out of a contempt charge the first time, but he won't help you again.

Glenna told me that the judge hates you and the judge will gladly throw the book at you.

Try anything, and together, we'll haul you back to court and have that judge throw you in jail.

Remember, my dad is friends with every judge in Chattanooga and you'll be toast.

Now there, you've been warned.

In his affidavit in support of his motion to recuse, Former Husband stated that Former Wife's father, John A. Walker, Jr., was present at the July 2009 hearing on the prior contempt charge. Former Husband stated in his affidavit that Mr. Walker had been an attorney for "over 46 years" and was "a very well-known attorney with strong ties to Chattanooga attorneys and judges." Former Husband also stated in his affidavit that he felt that Mr. Walker's presence at the July 2009 hearing "influenced the judge's decision in that matter." Former Husband further stated in his affidavit that the Trial Court's July 2009 contempt ruling was "overturned" after his attorney, John P. Konvalinka, filed a motion to alter or amend the contempt order. The reference to "Glenna" in the email apparently is a reference to Glenna Ramer, Former Wife's attorney during both the divorce and in the present contempt proceedings.

Former Husband also stated in his affidavit in support of his motion to recuse that he did not discover the September 2010 email until he was "in the process of deleting an email account" on April 10, 2013. He stated that, "[u]pon reading said email," he recalled a

conversation he had with Former Wife "toward the close of mediation during the divorce process." According to Former Husband's affidavit, Former Wife told him at that time that he "had best take the offer and if I did not or if I should ever be a problem, she, along with her father (Mr. Walker), her attorney (Glenna Ramer) and the judge would come together and have [him] thrown in jail." Former Husband concluded his affidavit by stating that, "[b]ased upon [his] prior experience in the courtroom, the email and [his] recalled conversation with [Former Wife]," he was "very fearful of a biased and unjust outcome" if the Trial Court Judge remained on the case for the present contempt proceedings.

In response to Former Husband's motion to recuse, Former Wife asserted that she never sent the email attached to the motion. In support of this contention, Former Wife attached to her response an affidavit from her attesting to the accuracy of an attached printout of all emails sent from August of 2010 through October of 2010 from the same email account of hers listed on the purported email submitted in support of the motion to recuse. In her affidavit, Former Wife states that she neither authored the offensive email nor sent it from her email account as the printout of her account activity demonstrated. In addition, Former Wife argued in her response that the purported email amounted to nothing more than inadmissible hearsay.

At the hearing on the motion to recuse, the Trial Court Judge stated that she had "no clue" as to the identity of John Walker, Former Wife's father. Glenna Ramer, Former Wife's attorney, also stated that she never made the statements attributed to her in the email submitted in support of the motion to recuse. At the conclusion of the hearing, the Trial Court Judge stated that she did not remember anything about this case, other than maybe some "pictures on the wall," and that she did not "see any reason at all" that she should recuse herself. By written order entered on Jun 3, 2013, the Trial Court Judge denied the motion to recuse without further comment.

On timely appeal to this Court, Former Husband argues that, "[g]iven the totality of the circumstances," it is "clear" that "Judge Bolton harbors some sort of bias against [Former Husband] such that she would not be able to rule impartially in this matter." Former Husband further argues that, even if the Trial Court Judge does not have an actual bias against him, "given all of the facts and history in this case, a person of ordinary prudence in the judge's position could find a reasonable basis for questioning the judge's impartiality." Former Husband asks that we reverse the order on review and direct recusal of the Trial Court Judge.

**Analysis**

Appeals from orders denying motions to recuse or disqualify a trial court judge from presiding over a case are governed by Rule 10B of the Rules of the Supreme Court of Tennessee. Pursuant to section 2.01 of Rule 10B, a party is entitled to an "accelerated interlocutory appeal as of right" from an order denying a motion for disqualification or recusal of a trial court judge. The appeal is commenced by filing a "petition for recusal appeal" with the appropriate appellate court. Tenn. Sup. Ct. R. 10B, § 2.02. The petition for recusal appeal "shall be accompanied by copies of any order or opinion [of the trial court] and any other parts of the record necessary for determination of the appeal." Tenn. Sup. Ct. R. 10B, § 2.03. "If the appellate court, based upon its review of the petition and supporting documents, determines that no answer from the other parties is needed, the court may act summarily on the appeal. Otherwise, the appellate court shall order that an answer to the petition be filed by the other parties. The court, in its discretion, also may order further briefing by the parties within the time period set by the court." Tenn. Sup. Ct. R. 10B, § 2.05. Rule 10B goes on to provide that "[t]he appeal shall be decided by the appellate court on an expedited basis upon a de novo standard of review. The appellate court's decision, in the court's discretion, may be made without oral argument." Tenn. Sup. Ct. R. 10B, § 2.06.

We have determined in this case after a review of the petition and supporting documents submitted with the petition that an answer, additional briefing, and oral argument are unnecessary to our disposition because the record provided by Former Husband does not demonstrate error by the Trial Court Judge in the denial of the motion to recuse.[1] As such, we have elected to act summarily on this appeal in accordance with sections 2.05 and 2.06 of Rule 10B.

Without question, "[t]he right to a fair trial before an impartial tribunal is a fundamental constitutional right." Bean v. Bailey, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting State v. Austin, 87 S.W.3d 447, 470 (Tenn. 2002)). Article VI, section 11 of the Tennessee Constitution states,

> No Judge of the Supreme or Inferior Courts shall preside on the trial of any
> cause in the event of which he may be interested, or where either of the parties
> shall be connected with him by affinity or consanguinity, within such degrees

---

[1]We have confined our review to those documents that were a part of the record in the proceedings below. Former Wife's motion to dismiss this appeal is premised upon the contention that Former Husband accompanied his Petition for Recusal Appeal with documents that never were made a part of the record in the trial court. Because we have not considered any documents that were not part of the record in the proceedings below, the motion to dismiss this appeal is not well-taken and is denied as moot.

as may be prescribed by law, or in which he may have been of counsel, or in which he may have presided in any inferior Court, except by consent of all the parties.

This constitutional right "is intended 'to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor.'" Id. (quoting Austin, 87 S.W.3d at 470). By statute, the General Assembly has delineated those circumstances in which recusal is constitutionally required. See Tenn. Code Ann. § 17-2-101 (providing that no judge shall be competent to preside over a case, except by consent of all parties, where (1) the judge "is interested in the event of any cause," (2) the judge "is connected with either party, by affinity or consanguinity, within the sixth degree, computing by the civil law," (3) the judge "has been of counsel in the cause," (4) the judge "has presided on the trial in an inferior court," or (5) the judge presiding over a felony criminal case is connected to the victim of the crime "by affinity or consanguinity within the sixth degree, computing by the civil law").

In addition, "preservation of the public's confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." Kinard v. Kinard, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998); see also Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954) (holding that "justice must satisfy the appearance of justice"). As such, Rule 2.11(A) of the Code of Judicial Conduct as set forth in Rule 10 of the Rules of the Supreme Court of Tennessee requires a judge to recuse himself or herself "in any proceeding in which the judge's impartiality might reasonably be questioned." In other words, even if a judge subjectively believes he or she can be fair and impartial, the judge still must recuse himself or herself upon request whenever "'the judge's impartiality might be reasonably questioned because the appearance of bias is as injurious to the integrity of the judicial system as actual bias.'" Smith v. State, 357 S.W.3d 322, 341 (Tenn. 2011) (quoting Bean, 280 S.W.3d at 805).

The terms "bias" and "prejudice" generally "refer to a state of mind or attitude that works to predispose a judge for or against a party"; however, "[n]ot every bias, partiality, or prejudice merits recusal." Alley v. State, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994). To merit disqualification of a trial judge, "prejudice must be of a personal character, directed at the litigant, 'must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case.'" Id. However, "[i]f the bias is based upon actual observance of witnesses and evidence given during the trial, the judge's prejudice does not disqualify the judge." Id.

"A trial judge's adverse rulings are not usually sufficient to establish bias." State v. Cannon, 254 S.W.3d 287, 308 (Tenn. 2008). "Rulings of a trial judge, even if erroneous, numerous and continuous, do not, without more, justify disqualification." Alley, 882 S.W.2d at 821; see also State v. Reid, 313 S.W.3d 792, 816 (Tenn. 2006). The reason for this proposition has been explained by our Supreme Court as follows:

> [T]he mere fact that a judge has ruled adversely to a party or witness in a prior judicial proceeding is not grounds for recusal. Given the adversarial nature of litigation, trial judges necessarily assess the credibility of those who testify before them, whether in person or by some other means. Thus, the mere fact that a witness takes offense at the court's assessment of the witness cannot serve as a valid basis for a motion to recuse. If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartiality issue for strategic advantage, which the courts frown upon.

Davis v. Liberty Mut. Ins. Co., 38 S.W.3d 560, 565 (Tenn. 2001) (internal citations omitted).

There are no facts alleged or shown in the record that demonstrate either actual bias on the part of the Trial Court Judge or that would lead a well-informed, disinterested observer to question the impartiality of the Trial Court Judge in this case. Former Wife denied ever sending the purported email attached to Former Husband's motion. Former Wife's attorney denied on the record ever making any of the statements attributed to her in the email. Other than the Trial Court Judge's prior adverse contempt ruling against Former Husband, the only "evidence" submitted by Former Husband in support of his motion to recuse the Trial Court Judge were the September 2010 email and his recollection of a conversation he had with Former Wife during the prior divorce proceedings. Neither the purported email nor the recalled conversation involved statements made by or actions taken by the Trial Court Judge in this case. Former Wife's alleged threats to Former Husband, contained in both the email (which Former Wife disputes sending) and the conversation between the parties as recalled by Former Husband in his affidavit, are nothing more than unsubstantiated threats communicated by one litigant to another. Even if Former Wife sent the purported email and Former Wife's attorney made the statements attributed to her in the email, it cannot be argued successfully that the Trial Court Judge had a duty to recuse herself from presiding over the proceedings below because one of the litigants made an idle threat to another party and happened to invoke the Trial Court Judge's name in that threat.

## Conclusion

Having determined that the record provided by Former Husband does not demonstrate error, we deny the motion to dismiss this appeal and affirm the Trial Court's denial of the motion to recuse. Former Husband, Samuel B. Phillips, and his surety are taxed with the costs of this appeal, for which execution may issue.

_____
D. MICHAEL SWINEY, JUDGE