## OFFUTT *v.* UNITED STATES.

No. 27.   Argued October 22, 1954.—Decided November 8, 1954.

*Warren E. Magee* argued the cause for petitioner. With him on the brief was *Charlotte Maskey.*

*Gray Thoron* argued the cause for the United States. With him on the brief were *Solicitor General Sobeloff, Assistant Attorney General Olney, Beatrice Rosenberg* and *Edward S. Szukelewicz.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This case is here on review of a modified affirmance by the Court of Appeals of an order by the District Court summarily committing the petitioner for criminal contempt.

The proceeding grew out of the trial of one Peckham for abortion under D. C. Code, 1951, § 22–201, 31 Stat. 1322. The petitioner was Peckham's trial counsel. Almost from the outset, a clash between the presiding judge and petitioner became manifest, which, it is fair to say, colored the course of the trial throughout its 14 days, and with increasing personal overtones. The judge again and again admonished petitioner for what he deemed disregard of rulings and other behavior outside the allowable limits of aggressive advocacy, and warned him of the consequences by way of punishment for contempt which such conduct invited. On the other hand, these interchanges between court and counsel were marked by expressions and revealed an attitude which hardly reflected the restraints of conventional judicial demeanor. Such characterization of necessity derives from an abiding impression left from a reading of the entire record.

At the close of the trial, after the jury had retired for deliberation, the judge, acting under the procedure prescribed by Rule 42 (a) of the Federal Rules of Criminal Procedure [1] and invoking the authority of *Sacher* v. *United States,* 343 U. S. 1, found the petitioner guilty of criminal contempt on the basis of a certificate filed under the Rule, containing 12 findings of "contumacious, and unethical conduct in open court during the trial," and ordered him committed for 10 days to the custody of the United States Marshal for the District of Columbia.

The Court of Appeals found that four of the 12 findings amply supported the commitment, but reduced the punishment from 10 days to 48 hours. It concluded that "the

---

[1] "RULE 42. CRIMINAL CONTEMPT.

"(a) SUMMARY DISPOSITION. A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record."

record does not support the penalty imposed. Appellant's conduct cannot fairly be considered apart from that of the trial judge. Each responded to great provocation from the other. The judge's treatment of appellant, examples of which are included in an appendix to our opinion in Peckham v. United States, U. S. App. D. C., —— F. 2d ——, and which is the chief factor in leading a majority of this court to conclude that Peckham's conviction cannot stand, leads us all to conclude that appellant's sentence should be reduced from 10 days to 48 hours." 93 U. S. App. D. C. 148, 150, 208 F. 2d 842, 843–844. As indicated above, the Court of Appeals reversed Peckham's conviction because it found that the judge's behavior barred the court "from sustaining the judgment as the product of a fair and impartial trial." *Peckham* v. *United States,* 93 U. S. App. D. C. 136, 145, 210 F. 2d 693, 702.

In view of this Court's "supervisory authority over the administration of criminal justice in the federal courts," *McNabb* v. *United States,* 318 U. S. 332, 341, and the importance of assuring alert self-restraint in the exercise by district judges of the summary power for punishing contempt, we brought the case here. 347 U. S. 932.

We shall not retrace the ground so recently covered in the *Sacher* case, *supra.* In enforcing Rule 42 (a), the Court in that case emphasized its duty to safeguard two indispensable conditions to the fair administration of criminal justice: (1) counsel must be protected in the right of an accused to "fearless, vigorous and effective" advocacy, no matter how unpopular the cause in which it is employed; (2) equally so will this Court "protect the processes of orderly trial, which is the supreme object of the lawyer's calling." 343 U. S., at 13–14. Rule 42 (a) was not an innovation. It did not confer power upon district judges not possessed prior to March 21, 1946. 327 U. S. 821. "This rule," the Advisory Committee on the rules of criminal procedure stated, "is substantially a

restatement of existing law, *Ex parte Terry*, 128 U. S. 289; *Cooke* v. *United States*, 267 U. S. 517, 534." The pith of this rather extraordinary power to punish without the formalities required by the Bill of Rights for the prosecution of federal crimes generally, is that the necessities of the administration of justice require such summary dealing with obstructions to it. It is a mode of vindicating the majesty of law, in its active manifestation, against obstruction and outrage. The power thus entrusted to a judge is wholly unrelated to his personal sensibilities, be they tender or rugged. But judges also are human, and may, in a human way, quite unwittingly identify offense to self with obstruction to law. Accordingly, this Court has deemed it important that district judges guard against this easy confusion by not sitting themselves in judgment upon misconduct of counsel where the contempt charged is entangled with the judge's personal feeling against the lawyer.

Of course personal attacks or innuendoes by a lawyer against a judge, with a view to provoking him, only aggravate what may be an obstruction to the trial. The vital point is that in sitting in judgment on such a misbehaving lawyer the judge should not himself give vent to personal spleen or respond to a personal grievance. These are subtle matters, for they concern the ingredients of what constitutes justice. Therefore, justice must satisfy the appearance of justice.

Duly mindful of the fact that the exercise of the power of summary punishment for contempt "is a delicate one and care is needed to avoid arbitrary or oppressive conclusions," this Court in *Cooke* v. *United States, supra,* without in the slightest condoning contemptuous behavior on the part of a lawyer, deemed it desirable that "where conditions do not make it impracticable, or where the delay may not injure public or private right, a judge called upon to act in a case of contempt by personal attack upon him, may, without flinching from his duty, properly

ask that one of his fellow judges take his place." 267 U. S., at 539.

The Government has vigorously pressed upon us the leeway that must be allowed to a trial judge in assessing the necessities of such a situation. We do not mean to imprison the discretion of judges within rigid mechanical rules. The nature of the problem precludes it. Nor are we unmindful of the fact that the ultimate finding of reprehensible misconduct by petitioner was sustained by the Court of Appeals. That great weight is to be given to the findings of fact by the two lower courts is a rule of wisdom in the exercise of the reviewing power of this Court. But in the enforcement of the rule it is important to discriminate between more or less subordinate facts leading to a judgment of their legal significance, and a conclusion—though concurred in by two courts—that may in fact imply a standard of law on which judgment on the case in its entirety is based. *Baumgartner* v. *United States,* 322 U. S. 665, 670–671; *United States* v. *Appalachian Elec. Power Co.,* 311 U. S. 377, 403–404. We are not intimating that the Court of Appeals was not justified in finding ample support for its conclusion that the trial judge was warranted in deeming petitioner's conduct as such contemptuous. The real issue is whether under the decision of the *Cooke* case such a ruling should have been made by the trial judge, or whether for the very purpose of vindicating justice for which the power of summary contempt is available, the determination of petitioner's guilt and the punishment properly to be meted out on a finding of guilt should have been made in the first instance by a judge not involved, as was this trial judge, in the petitioner's misconduct.

The fact that the Court of Appeals reduced the sentence from 10 days to 48 hours because the petitioner's conduct "cannot fairly be considered apart from that of the trial judge," is compelling proof that the latter failed

to represent the impersonal authority of law. Plainly, the Court of Appeals thought that in the trial court's disposition of the misconduct of the petitioner there was an infusion of personal animosity. And indeed that court found that such was the fact on a full consideration of the record in the *Peckham* case and for that reason reversed Peckham's conviction. That court spoke of "the excessive injection of the trial judge into the examination of witnesses, his numerous comments to defense counsel, indicating at times hostility, though under provocation," which it concluded "demonstrated a bias and lack of impartiality." *Peckham* v. *United States, supra,* 93 U. S. App. D. C., at 145, 210 F. 2d, at 702.

It bears repeating that the whole record amply supports this characterization of the trial judge by the Court of Appeals.[2] And his feeling toward the lawyer on whom

---

[2] For our purposes it will be sufficient to quote two specific instances:

"The Court: Motion denied. Proceed.

"Mr. Offutt: I object to Your Honor yelling at me and raising your voice like that.

"The Court: Just a moment. If you say another word I will have the Marshal stick a gag in your mouth." (R. 215.)

"The Court: Don't argue with the Court.

"Mr. Offutt: I am not arguing with the Court, Your Honor.

"The Court: Don't answer back to the Court, either.

"Mr. Offutt: Oh, I thought Your Honor—I am merely trying to present my point.

"The Court: Proceed with the next question.

"Mr. Offutt: Thank you, Your Honor.

"Your Honor, I object to your raising your voice like that and shouting at me, and I urge Your Honor not to do it.

"The Court: Well, you are misbehaving, Mr. Offutt.

"Mr. Offutt: And I have a right—

"The Court: And it is my function to hold the reins tight and preserve order and decorum in the courtroom.

"Mr. Offutt: But not to yell at me, Your Honor.

"And I submit I am entitled, and my duty is to make objections

he had to pass sentence is revealed by his statement to the jury in discharging them.[3]

The question with which we are concerned is not the reprehensibility of petitioner's conduct and the consequences which he should suffer. Our concern is with the fair administration of justice. The record discloses not a rare flare-up, not a show of evanescent irritation—a modicum of quick temper that must be allowed even judges. The record is persuasive that instead of representing the impersonal authority of law, the trial judge permitted himself to become personally embroiled with the petitioner. There was an intermittently continuous wrangle on an unedifying level between the two. For one reason or another the judge failed to impose his moral authority upon the proceedings. His behavior precluded that atmosphere of austerity which should especially dominate a criminal trial and which is indispensable for an appropriate sense of responsibility on the part of court, counsel and jury. Such an atmosphere will also make for dispatch insofar as is consonant with a fair trial. The manner in which this trial was conducted doubtless contributed to the wastefulness of 14 trial days for a case of such limited scope as was the *Peckham* prosecution.

We conclude that application of the rule pronounced in *Cooke* v. *United States* is called for. The fact that the Court of Appeals here reduced the sentence im-

---

and to state for the record, and I am putting my objections on the record.

"The Court: You have forfeited your right to be treated with the courtesy that this Court extends to all members of the Bar." (R. 250.)

[3] "I also realize that you had a difficult and a disagreeable task in this case. You have been compelled to sit through a disgraceful and disreputable performance on the part of a lawyer who is unworthy of being a member of the profession; and I, as a member of the legal profession, blush that we should have such a specimen in our midst." (R. 260.)

posed by the trial judge does not take this situation out of the moral and judicial considerations expounded on behalf of the Court by Mr. Chief Justice Taft. To sanction such a course of procedure would give it encouragement. In the language of the *Cooke* case, with one appropriate change, "We think, therefore, that when this case again reaches the District Court to which it must be remanded, the judge who imposed the sentence herein should invite the Chief Judge of the District Court to assign another judge to sit in the second hearing of the charge against the petitioner." See 267 U. S., at 539.

*Reversed.*

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS join in the opinion of the Court and concur in the reversal and remand of the case for hearing before another judge. They would go further, however, and direct that petitioner be accorded a jury trial, for reasons set out in their dissents in *Sacher* v. *United States,* 343 U. S. 1, 14–23, and *Isserman* v. *Ethics Committee,* 345 U. S. 927.

MR. JUSTICE REED and MR. JUSTICE BURTON dissent. They would affirm the judgment of the Court of Appeals on the basis of its opinion.

MR. JUSTICE MINTON, dissenting.

This case goes back to the District Court for hearing by another judge on charges as to which, on the record, this Court admits petitioner is guilty. It is only a question of how much punishment he shall receive. Two days, under all the circumstances, did not seem too much to the Court of Appeals that reviewed the conduct of judge and counsel, nor does it to me. I would not, after *Sacher,* apply the *Cooke* case to the circumstances of this proceeding. The writ of certiorari should be dismissed as improvidently granted.