IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

FILED

March 8, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| TERI MICHELLE PARKER | ) | FOR PUBLICATION |
| | ) | |
| Appellant | ) | FILED: |
| | ) | |
| v. | ) | HOUSTON CHANCERY |
| | ) | |
| RICHARD KEN PARKER | ) | HON. ALLEN W. WALLACE, |
| | ) | CHANCELLOR |
| Appellee | ) | |
| | ) | NO. 01-S-01-9704-CH-00085 |

CONCURRENCE

Although I concur in the majority's decision to affirm the grant of custody to the father, I write separately to condemn the appearance of impropriety this case exudes. As the United States Supreme Court stated in Offutt v. U.S., 348 U.S. 11, 14, 75 S. Ct. 11, 13, 99 L. Ed. 11, 16 (1954), "justice must satisfy the appearance of justice." The trial court's actions in this case do not satisfy that appearance.

Under the authority of Palmore v. Sidoti, 466 U.S. 429, 104 S. Ct. 1879, 80 L. Ed. 2d 421 (1984), the trial court clearly erred by allowing the introduction of the nurse practitioner's testimony regarding the alleged harmful effects on the child from an interracial relationship. The admission of this testimony seemingly violated Palmore's prohibition against heeding private biases. See id. at 433, 104 S. Ct. at 1882, 80 L. Ed. 2d at 426. The trial court then compounded its error during the testimony of another witness by remarking:

> She [Mrs. Parker's mother] comes
> from the same school I do. She
> can't help the way she feels.
> Society today feels differently than
> the way we were brought up.

This remark was made during a series of questions about the mother's relationship with her Afro-American employer. It thus could easily have been construed as reflecting the trial court's own prejudices regarding interracial relationships.

The trial court's visitation order also furthered the appearance of impropriety. In that order, the trial court prohibited the minor child from having any contact with the mother's employer, who was her alleged Afro-American paramour. This prohibition was neither requested by either party nor supported by the record in any way; rather, it was "gratuitously" imposed by the trial court.

I accept, unequivocally, the trial court's statement in the record that race did not play a part in its decision to award custody to the father. This acceptance, however, neither erases the errors nor removes the appearance of impropriety. Thus, the judicial process is the victim. Under ordinary circumstances, such an appearance would mandate that this Court remand the case for a new determination of custody. See Tenn. R. App. P. 36(b) (final judgment may be set aside if "error involving a substantial right . . . would result in prejudice to the judicial process").

This case, however, is typical of those in which the appropriate "legal decision" would effectively have a synergistic

effect on the errors already made.  At least for now, the trial court's custody decision has become, to a degree, unassailable simply because of the passage of time.  Recognizing how the mere passage of time can frustrate our ability to do justice, this Court has instituted mechanisms designed to expedite review of custody cases.  Unfortunately, this case was well into the process when those mechanisms were instituted and thereby was unaffected by them.

I agree, therefore, with the majority's decision to affirm the judgment of custody to the father without a remand for a fresh determination of the parties' comparative fitness, because there is some evidence in the record supporting the trial court's conclusion that the mother's relationship with her employer caused her to neglect the child.  Even though the appearance of impropriety in the trial court's actions cannot be erased, the judgment is probably, nevertheless, the most reasonable disposition now apparent and available.

_____
ADOLPHO A. BIRCH, JR., Justice