# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR RECUSAL

### NO. 03-05-00585-CR
### NO. 03-05-00586-CR

**Ex parte James W. Ellis**

### NO. 03-05-00589-CR
### NO. 03-05-00590-CR
### NO. 03-05-00591-CR
### NO. 03-05-00592-CR
### NO. 03-05-00593-CR
### NO. 03-05-00594-CR
### NO. 03-05-00595-CR
### NO. 03-05-00596-CR
### NO. 03-05-00597-CR
### NO. 03-05-00598-CR
### NO. 03-05-00599-CR
### NO. 03-05-00600-CR
### NO. 03-05-00601-CR
### NO. 03-05-00602-CR
### NO. 03-05-00603-CR

**Ex parte John Dominick Colyandro**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
NOS. 9040564, 9040565, 9040566, 9040567, 9040568, 9040569, 9040570, 9040571, 9040572, 9040573,
9040574, 9040575, 9040576, 9040577, 9040598, D-1-DC-2005-904121, & D-1-DC-2005-904122
HONORABLE BOB PERKINS, JUDGE PRESIDING**

## DISSENTING OPINION

In light of the troubling procedural history of this case, including the dicta-laden majority opinion that was issued on August 22, 2008, I join Justice Patterson's dissent from the decision to overrule the State's motion to recuse[1] and write separately to express certain additional concerns.[2]

---

[1] In the interest of judicial economy, the arguments and authorities presented by Justice Patterson's dissent need not be repeated here. Furthermore, I shall refrain from including a blow-for-blow response to the majority's attacks on my dissent, choosing instead to focus on those issues I find pertinent to this recusal motion. That being said, I disagree with the majority's contention that the inherent problems in the opinion issued in the underlying appeal are irrelevant to a determination of the recusal motion. Rather, it is my belief that the disturbing history of this case cannot be ignored when considering whether a justice's impartiality has been called into question.

[2] After only three justices—Ken Law, David Puryear, and Bob Pemberton—voted on October 8, 2008, to overrule the state's recusal motion, the court issued a notice to the parties, which stated, "The State's motion to recuse Justice Alan Waldrop was considered *en banc* and was overruled by this Court on the date noted above." This notice was misleading since the State's motion was not, in fact, considered en banc. Rather, it was considered by only four of the five remaining justices who could properly participate. *See* Tex. R. App. P. 16.3(b) (motion to recuse must be decided by "a majority of the remaining judges sitting en banc"). At the time the motion was overruled, I had not yet voted. Rather, I had asked the participating justices for additional time—no more than three days—to review the relevant legal authorities. In light of the fact that no response to the motion had been requested from defense counsel by this Court, I felt that additional research was required in order to properly consider the motion. However, rather than affording me additional time to assess the legal issues or providing me with any authority they may have considered in voting to overrule, the three-judge majority issued notice to the parties that the motion had been overruled, purportedly after en banc consideration.

While the majority claims that I refused to vote on the motion, stating only that I was "booked up," the email correspondence quoted by the majority is incomplete. In response to Justice Puryear's October 2nd email requesting a conference on the motion the next morning at 10:30, I replied less than half an hour later with the following email:

> I am interviewing prospective law clerks tomorrow. I'm booked up for most of the
> day. Tomorrow at 10:30 will not work for me.

2

The majority attempts to downplay the fact that the civil suit in question here is based on the same essential facts as the instant criminal prosecution, stating that the attachments to the State's motion to recuse "show that neither Justice Waldrop nor his client had been served with all of the various pleadings filed in the civil suit detailing the basis for the civil suit." Regardless of whether Justice Waldrop or TLR had been served with *all* of the various pleadings, it would not be unreasonable to expect the basis for the civil suit to be clearly detailed in the plaintiffs' seventh amended petition. This petition can be found among the attachments to the State's motion by virtue of its inclusion as exhibit five to TLR's "Response to Plaintiffs' Motion to Compel," a document bearing Justice Waldrop's signature. As a result, I disagree with the majority's characterization of Justice Waldrop and his client's involvement in the civil suit, particularly the notion that they had

_____

> If someone has actually researched any issues, it would be helpful to share the information with the rest of us.

No legal authorities on the issues raised in the motion were forthcoming. I have no record of a subsequent email from Justice Puryear suggesting a new conference date or time.

At the time the notice to the parties was issued, the Court was aware of Justice Patterson's intent to dissent from the decision to overrule. The notice was issued without the benefit of Justice Patterson's dissent and without any indication that a dissent was forthcoming. While the votes of three justices constituted a majority of the Court in this case and therefore were sufficient to overrule the motion, I find it troubling that the voting justices refused to deliberate or consult the full Court before ruling on a motion that must be considered en banc. An appellate court should encourage, rather than impede, the deliberative process, particularly regarding a motion of this magnitude. A motion to recuse should be carefully and thoughtfully considered by the Court, in order to promote public confidence in the judiciary. In this case, however, the voting justices, both in refusing to request a response from defense counsel and in overruling the motion before I had the opportunity to fully consider the legal issues involved, have discouraged any meaningful discussion of the motion's merits.

3

no knowledge of the basis for the suit and were concerned only with the possible political motivations of discovery requests.[3]

The seventh amended petition, which Justice Waldrop and his client, TLR, clearly had at their disposal, describes the matter in controversy, in part, as follows:

> All defendants conspired to violate Section 254, Texas Election Code. Defendants conspired to conceal illegal corporate contributions by failing to report them to the Texas Ethics Commission. Specifically, for example, on or about September 10, 2002, defendant Colyandro, at the direction of defendant Ellis and with the agreement of defendant Ceverha, caused a blank check to be sent overnight to defendant Ellis in Washington, D.C. The funds for the check were to be supplied from unreported corporate contributions received by TRMPAC [Texans for a Republican Majority Political Action Committee]. With the agreement of defendants Ceverha and Colyandro, defendant Ellis completed the check in the amount of $190,000 as political contributions to Republican candidates for the Texas Legislature . . . . The unlawful actions of the defendants included concealing the existence of the funds by . . . deliberately engaging in the unlawful act of channeling corporate contributions into Texas legislative races through the scheme of laundering the money through the Republican National Committee.

A description of the matter in controversy in the instant criminal prosecution can be found in the majority opinion authored by Justice Waldrop and issued by this Court on August 22, 2008. The opinion states:

> Collectively, the indictments accuse Ellis and Colyandro of participating in a scheme to channel unlawful corporate political contributions to candidates for the Texas House of Representatives in 2002 in violation of the Texas Election Code. . . . The remaining indictments alleged that on or about September 13, 2002, Ellis and

---

[3] I further disagree with the majority's absurd contention that Justice Waldrop's statement that his client had "no information relevant to the allegations in this politically motivated lawsuit" is a comment on the decision to serve discovery requests, rather than a comment on the merits of the suit itself.

4

Colyandro knowingly conducted and facilitated a transaction involving the proceeds of activity that violated section 253.094 of the election code, and that the value of the funds was $100,000 or more. The indictments state that six named corporations gave unlawful contributions totaling $155,000 to TRMPAC, that Ellis and Colyandro delivered these corporate contributions to the Republican National State Elections Committee in the form of a check for $190,000 drawn on a TRMPAC account and signed by Colyandro, and that the national committee then made contributions totaling $190,000 to a list of Texas house candidates suggested by Ellis.

(citations omitted). The opinion goes on to note that Ellis and Colyandro were later reindicted and that the new indictments did not allege that the $190,000 transfer was made by check.

A comparison of the plaintiff's seventh amended petition in the civil case and the facts of the instant criminal prosecution reveal that the civil suit involved the same matter in controversy in the criminal prosecution—the alleged money laundering of $190,000 in corporate contributions to Republican candidates for the Texas legislature, occurring in September 2002.

As discussed in my dissenting opinion to the denial of en banc consideration,[4] the panel opinion in this case presented a number of troubling issues, including the panel's insistence on addressing issues not properly before the Court, an unexplained two-year delay in the disposition of what was supposed to be an "accelerated" appeal, and a tortured application of the reasonable-person standard.[5] Such procedural and jurisprudential irregularities, when coupled with the written

_____

[4] *See Ex parte Ellis*, No. 03-05-00585-CR, 2008 Tex. App. LEXIS 7831 (Tex. App.—Austin Aug. 29, 2008, no pet. h.) (Henson, J., dissenting), *available at* http://www.3rdcoa.courts.state.tx.us/opinions/HTMLopinion.asp?OpinionID=17252.

[5] This same tortured analysis resurfaces in the majority's opinion today, in the form of the assertion that "no reasonable, disinterested member of the public . . . would have a reasonable doubt as to Justice Waldrop's impartiality," despite the fact that two of the five justices deciding this recusal motion are concerned that Justice Waldrop's impartiality has been called into question. Perhaps the majority is referring only to those reasonable, disinterested members of the public who also believe that checks are not "funds." *See id.* at *10-14.

statements described in the State's motion to recuse, are sufficient to give a disinterested observer cause to question whether the case was heard by an impartial tribunal. *See Rogers v. Bradley*, 909 S.W.2d 872, 882 (Tex. 1995) (Enoch, J., concurring) (motion to recuse should be evaluated from disinterested observer's point of view).[6]

The recency of the statements at issue in the State's motion is also a matter of some concern. While the majority correctly observes that a candidate for a Texas court of appeals must have at least ten years' experience in the legal field, *see* Tex. Const. art. 5, §§ 2(b), 6, the remarks at issue in the State's motion to recuse were not made ten years, five years, or even one year before Justice Waldrop took the bench. Rather, Justice Waldrop was initially appointed to this Court in August 2005, less than a year after some of the statements described in the State's motion were made. The attachments to the motion reflect that as late as November 29, 2004, Justice Waldrop filed a pleading in the civil action that referred to the plaintiffs' case as a "politically motivated lawsuit," and suggested that the plaintiffs were attempting "to harass political opponents using the tools designed for legitimate civil disputes."

"Wise observers have long understood that the appearance of justice is as important as its reality." *J.E.B. v. Alabama*, 511 U.S. 127, 161 n.3 (1994) (Scalia, J., dissenting). In the present case, a justice of this Court, in the context of a recent civil case arising out of the same core facts, indicated that he was predisposed to believe that the allegations were merely "politically motivated." Whether this is true or not, we are not to look solely to whether there was actual bias,

---

[6] One might also question why, if Justice Waldrop's lack of bias or partiality is so obvious, a 38-page opinion, including personal attacks on the dissenting justices, was necessary to explain why the motion to recuse was denied.

but also whether there was "a likelihood of bias or an appearance of bias." *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964). Granted, such a stringent rule may exclude "judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.'" *In re Murchison*, 349 U.S. 133, 136 (1955) (quoting *Offutt v. U.S.*, 348 U.S. 11, 14 (1954)). Because I am not convinced that the appearance of justice was satisfied in this case, I respectfully dissent.[7]

_____

Diane M. Henson, Justice

Before Chief Justice Law, Justices Patterson, Puryear, Pemberton and Henson

Filed:   December 31, 2008

Publish

---

[7] At the time the three-judge majority voted to overrule the recusal motion in October 2008, Justice Waldrop had only provided the Court with a cursory email referring the recusal motion to the court for a vote. The document entitled "Statement on Texas Rule of Appellate Procedure 16.3(b) Certification," recently authored by Justice Waldrop, was not in existence and was certainly not considered by the majority when deciding the recusal motion. Thus, it is unknown why a statement—that was never considered by the Court—is being released with the opinion.