DAVIS, Senior Circuit Judge,
concurring:
I am pleased to join in full Judge King’s excellent opinion for the panel.
A brief word is in order, however, in response to our good friend’s concurring opinion, in which exception is taken to the unexceptional observations set forth in footnote 10 of the majority opinion. Our friend seems to think we are somehow being too harsh on the government, and perhaps operating outside the bounds of our adjudicative responsibilities, as well, in making the comments in that footnote, writing, in part:
*117 Thus, “[i]t should be a rare occasion when judges criticize, and thereby intrude into, a legitimate exercise of pros-ecutorial discretion.” United States v. Bonner, 363 F.3d 213, 219 (3d Cir.2004) (Smith, J., concurring).
Ante at 116.
Lest the reader misapprehend the true import of the brief comment taken from Judge Smith’s concurring opinion in the Third Circuit’s Bonner case, however, an elaboration is crucial. In Bonner, upon a government appeal, the court reversed the district court’s grant of the defendant’s motion to suppress evidence, finding that the district court erred in concluding that local police officers lacked reasonable ar-ticulable suspicion to chase on foot and tackle a motorist who fled from a legitimate traffic stop. 363 F.3d at 215, 218. A similar motion had been granted by a state court judge, after which (during the pen-dency of the Commonwealth’s appeal) a federal prosecution was commenced based on the same underlying conduct.
Although Judge Smith concurred in the reversal of the suppression order, he also specifically and explicitly approved a portion of Judge McKee’s full-throated dissent, in which Judge McKee strongly criticized state and federal prosecutors for decisions our friend apparently would view as mere “strategic choices” that should lie beyond the reach of a legitimate, thoughtful critique by the members of the Third Branch.*
Unlike judges, such as our concurring friend, who apparently believe it is never appropriate for those of us in the Judicial Branch to express reservations or disapproval of manifestly irregular, if not illegal, “strategic choices” by prosecutors, I believe judges need to say more, not less, to the political branches about the serious deficits in our criminal justice system. Judges McKee and Smith plainly agree:
Although we have jurisdiction here and must exercise it, this procedural history does not reflect well on the criminal justice system and undermines the appearance of fairness so important to its proper functioning. “[T]o perform its high function in the best way[,] ‘justice must satisfy the appearance of justice.’ ” In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955) (quoting Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954)). In the future, I would hope that concern for the appearance of fairness will constrain prosecutors from engaging in the kind of *118 unexplained tactical manipulation that appears so evident here.
Bonner, 363 F.3d at 229 (McKee, J., dissenting). And thankfully, they are not alone. See, e.g., United States v. Ingram, 721 F.3d 35, 43 n. 9 (2d Cir.2013) (Calabresi, J. concurring) (“[W]e judges have a right — a duty even — to express criticism of legislative judgments that require us to uphold results we think are wrong.” (footnotes and citations omitted)).
Indeed, who is better positioned to dialogue with the legislative and executive branches about the criminal justice system generally, and about “fundamental notions of fairness,” Bonner, 363 F.3d at 220 (Smith, J., concurring), and “concern for the appearance of fairness,” id. at 230 (McKee, J., dissenting), specifically, than judges? And where is it more appropriate to carry on that dialogue than in the opinions we issue resolving actual cases?
Contemporary discord in this country we all love, especially in stressed communities where interaction with the criminal justice system is a regular and dispiriting occurrence for many residents, might well be reduced if we judges better used our voices to inform and educate the political branches .about how the decisions they make actually operate down here on the ground floor of the criminal justice system. In an era of mass incarceration such as ours, any fear that restrained judicial commentary on dicey prosecutorial practices or “strategic choices” might result in “the Government [] becoming] a less zealous advocate,” ante at lié, is most charitably described as fanciful.
In sum, when judges “see something” judges should “say something.”

 Judge Smith wrote:
Finally, although I join Judge Cowen in reversing the District Court, I echo the sentiments of Judge McKee expressed in Part III of his dissent.
It should be a rare occasion when judges criticize, and thereby intrude into, a legitimate exercise of prosecutorial discretion. Nor should we routinely question in our opinions the policy decisions of Congress to federalize what has traditionally been state law street crime. Our institutional role as judges is limited by our jurisdiction and by the comity and respect we owe to coordinate branches of government.
That being said, the instant case presents a series of events which the dissent characterizes as a prosecutorial “switcheroo.” I cannot disagree with that characterization, and I share the "concern for the appearance of fairness” expressed by Judge McKee. It is one thing for the government to assume an investigation initiated by state law enforcement officials, or even to adopt a prosecution commenced by state prosecutors. It is quite another to seek a federal indictment where the federal interest in the case is recognized only after state prosecutors have given the- case their best shot in the state courts and lost on an issue of state law. Not only does such a tactic offend fundamental notions of fairness, it is contrary to traditional notions of our federalism.
United States v. Bonner, 363 F.3d 213, 219-20 (3d Cir.2004) (Smith, J., concurring)(emphasis added).