BOOTH, J.S.C.
*201 Before the court is plaintiffs' motion for recusal of the assigned trial judge under Rule 1:12-1(g) and the Code of Judicial Conduct. Plaintiffs assert that a reasonable, fully-informed person would have doubts about the judge's impartiality due to personal bias against plaintiffs' counsel as well as against a principal member of plaintiff, Racetrack Supermarket, LLC.
*449 I. Background
In this action, plaintiffs, a limited liability company maintaining its principal offices in Cherry Hill, New Jersey and an individual living and residing in Cherry Hill, New Jersey, seek an order invalidating and setting aside the adoption of Ordinance 2016-13 by Cherry Hill Township as arbitrary, capricious, unreasonable and contrary to law. Plaintiffs' eight-count complaint alleges the adoption of the aforementioned ordinance constitutes spot zoning insofar as it was adopted for the purpose of promoting the application to construct a Costco warehouse retail center rather than the public good. Plaintiffs further allege that defendant, The Cherry Hill Township Planning Board, failed to make an adequate *202 finding that the ordinance is consistent with the Cherry Hill Township Master Plan, that the ordinance is not substantially consistent with the Master Plan, and that the General Development Plan required amendment prior to adoption of Ordinance 2016-13.
In September 2018, plaintiffs' counsel received notification from the Superior Court scheduling the matter for trial and assigning this judge as the trial judge. The motion for recusal then followed.
II. Plaintiffs' Allegations
Plaintiffs have moved for recusal of the assigned trial judge alleging a longstanding history of personal animosity between plaintiffs' counsel, Stuart A. Platt of Platt & Riso, PC, and the trial judge "... for the greater part of the last ten (10) years." Additionally, plaintiffs allege that, prior to his appointment and confirmation as a member of the New Jersey Judiciary, as chairperson of his county's political party, the trial judge "was in a position to fund and direct a political campaign" against the son of the principal of plaintiff Racetrack Supermarket, LLC.
In support of their motion, plaintiffs submit a certification of plaintiffs' counsel where he indicates he is a resident of Voorhees, New Jersey since 1991 and a life-long Democrat, supporting and actively participating in local Democratic campaigns for election and re-election, as well as having served as an officer of the Voorhees Democratic Club and had been elected to and served as a member of the Voorhees Township Democratic County Committee.
Plaintiffs' counsel certifies that, prior to becoming a member of the judiciary, the trial judge was actively involved in Voorhees and Camden County Republican politics, running unsuccessfully as a Republican candidate for Voorhees Township Committee, the local governing body, in 2008 and 2012, and serving as a member of Voorhees Township Republican County Committee, where he served as its chairperson from 2011 until his confirmation as judge in January 2017. Plaintiffs' counsel certifies that he actively supported *203 the Democratic candidates who ran in 2008 and 2012 against the trial judge. In the 2012 election, the trial judge ran against the sister of Eric Riso, the other named partner in plaintiffs' counsel's firm, and was defeated.
Plaintiffs' counsel's certification indicated that the Democratic candidates made serious allegations against the judge as to his character and fitness for elected office in both the 2008 and 2012 campaigns and that, following the 2008 campaign, plaintiffs' counsel was told under condition of anonymity that the trial judge held him personally responsible for the campaign ads and materials that attacked him, and that the judge was considering suing plaintiffs' counsel and others because of the campaign materials. Aside from indicating the source for this information regarding the alleged statement by the trial judge *450 was anonymous, no specifics were provided such as substance of the conversations, dates, or locations where the conversations allegedly took place.
Plaintiffs' counsel next certifies that an expert witness used by the trial judge during his time as a practicing attorney also served as a construction code official in Winslow Township, New Jersey during part of the time plaintiffs' counsel served as solicitor for the township and that, during his dealings with this individual, it was relayed on several occasions to plaintiffs' counsel the personal animus that the judge allegedly held against plaintiffs' counsel because of the aforementioned campaign materials from the 2008 campaign. Plaintiffs' motion was accompanied by no certification or affidavit from the former expert witness, nor were any specifics provided such as substance of the conversations, dates, or locations where the conversations allegedly took place.
At oral argument on the motion for recusal, plaintiffs' counsel amended the date of the aforementioned statements allegedly made by the judge according to the anonymous person and the former expert witness, to an earlier election campaign taking place in 2004, not the 2008 campaign.
Lastly in regard to the alleged personal animus with plaintiffs' counsel, the certification relates that plaintiffs' counsel was appointed *204 to the State of New Jersey Commission on Holocaust Education in December 2009 for a term through 2011 by then-Governor Jon S. Corzine. In 2013, plaintiffs' counsel indicates he reapplied to then-Governor Chris Christie's Office of Appointments to once again become a member of the Holocaust Education Commission and that, during the course of his application, he made inquiries with "certain people" and was told "on condition of anonymity and confidentiality" that the trial judge, then the chairperson of the Camden County Republican Committee, made efforts to "block" plaintiffs' counsel's appointment to the Holocaust Education Commission.
Lastly, plaintiffs' counsel certified that, while chairperson of the Republican committee, the trial judge was in a position to fund and direct campaign support against plaintiff Racetrack Supermarket LLC's principal member's son who ran for public office as a Democrat in Voorhees in 2015.
III. Additional Background from Oral Argument
At oral argument, plaintiffs' counsel acknowledged that his firm, of which he is one of two named partners, has previously appeared before this trial judge in March 2017 in another matter. In that prior matter, the judge actively participated in settlement discussions with counsel for the parties, one of whom was plaintiffs' counsel's partner, who is the other named partner in plaintiffs' counsels' firm and whose sister ran against the trial judge for local office in 2012. Plaintiffs' counsel further acknowledges that no motion for recusal was made in that prior matter and the trial judge conducted the proceedings in the prior matter in an entirely fair and impartial manner.
At oral argument, the trial judge inquired of plaintiffs' counsel of his recollection of their prior dealings with each other while representing adverse parties in a transactional matter while the trial judge was a practicing attorney, which was handled approximately one year prior to the trial judge joining the judiciary. Plaintiffs' counsel denied any recollection of the matter and his *205 dealings with the trial judge during that matter one way or the other. Plaintiffs' counsel admitted there has never been a cross word or any sort of heated exchange whatsoever between them and that all prior dealings and meetings between *451 them have been professional and cordial, of which the trial judge recalls several over the years.
IV. Legal Standard
The fair administration of justice is embodied in the Code of Judicial Conduct. Canon 1 of the Code of Judicial Conduct articulates that "An independent and impartial judiciary is indispensable to justice." Canon 2 directs that "A judge shall avoid impropriety and the appearance of impropriety." Rule 3.17(B) of the Code of Judicial Conduct states "Judges shall disqualify themselves in proceedings in which their impartiality or the appearance of their impartiality might reasonably be questioned, including, but not limited to the following: (1) Personal bias, prejudice or knowledge. Judges shall disqualify themselves if they have a personal bias or prejudice toward a party or a party's lawyer ...."
The court rules also speak to this issue. Rule 1:12-1(g) directs judges to not sit in any matter "when there is any ... reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." Therefore, not only must justice be administered fairly in actuality by members of the judiciary as they are sworn to do so, but it must also appear to the public to be administered fairly. "Justice must satisfy the appearance of justice." State v. Deutsch, 34 N.J. 190, 206, 168 A.2d 12 (1961) (quoting Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 99 L.Ed. 11 (1954) ). This standard requires judges to "refrain ... from sitting in any causes where their objectivity and impartiality may be fairly brought into question." Ibid. Therefore, judges must not only avoid acting in a biased way, but must avoid situations where they could reasonably be perceived as doing so. Anything less would "threaten[ ] the integrity of our judicial process."
*206 State v. McCabe, 201 N.J. 34, 987 A.2d 567 (2010) (quoting State v. Tucker, 264 N.J. Super. 549, 554, 625 A.2d 34 (App. Div. 1993) ).
Motions for recusal must be made to the judge sought to be disqualified. R. 1:12-2; N.J.S.A. 2A:15-49. The disposition of a motion to recuse is entrusted to the sound judgment of the judge. See State v. Flowers, 109 N.J. Super. 309, 311-12, 263 A.2d 167 (App. Div. 1970) ; Matthews v. Deane, 196 N.J. Super. 441, 445, 483 A.2d 232 (Ch. Div. 1984).
At oral argument, plaintiffs' counsel conceded that the motion for recusal is not based upon any allegation of actual animus,[1] but rather relies upon the *452 standard enunciated in DeNike v. Cupo, 196 N.J. 502, 958 A.2d 446 (2008). As the Supreme Court stated in DeNike:
To be clear, though, "it is not necessary to prove actual prejudice on the part of the court" to establish an appearance of impropriety; an "objectively reasonable" belief that the proceedings were unfair is sufficient. State v. Marshall, 148 N.J. 89, 279, 690 A.2d 1, cert. denied, 522 U.S. 850, 118 S. Ct. 140, 139 L. Ed. 2d 88 (1997).
*207 Those principles give rise to the following standard: Would a reasonable, fully informed person have doubts about the judge's impartiality?
[ Id. at 517, 958 A.2d 446.]
It is this objective standard the court applies to the present motion.
In DeNike, a Judge of the Superior Court and Presiding Judge of the Chancery Division oversaw two-and-a-half years of hard-fought litigation involving a dispute between business partners, and conducted a five-day bench trial, making various factual findings and rulings. Post-decision, but before the final order had been entered and while open issues remained, the judge engaged in discussions with counsel for one of the parties regarding the judge's employment at the counsel's firm following his imminent retirement. Two days after ruling on the disputes over the final order, the judge and counsel agreed in principle to the judge joining the firm. The judge announced his intention to join the firm at a retirement dinner that night, and joined the firm upon his retirement a little over three weeks later.
Applying the objective standard in DeNike, the Supreme Court considered two factors in determining whether a reasonable, fully-informed person would have doubts about the judge's impartiality: timing of the alleged conduct and the existence of a prospective financial relationship. Ibid. The Supreme Court did not mention other factors, nor did it expressly limit considerations in motions for recusal to the two factors. On the timing factor, the Supreme Court noted that, had the negotiations started a reasonable period of time after the case ended, there would have been no issue. However, because discussions began just days after the judge's decision and in the midst of arguments over the shape of the final judgment, the public had reason to lack confidence in the integrity of the process and outcome. With regard to the financial factor, the Supreme Court simply held that a judge cannot have a prospective financial relationship with one party's lawyer and expect to persuade the other party, or the public, that the court can nevertheless fairly assess the case.
*208 V. Analysis
a. Appearance of personal bias as it relates to plaintiffs' counsel
Plaintiffs allege that a reasonable, fully-informed person would have doubts about the judge's impartiality towards plaintiffs' counsel based upon certain statements allegedly made by the judge regarding plaintiffs' counsel relating to a past political campaign in 2004, as well as certain action taken by the judge when he was county chairperson of his political party with regard to plaintiffs' counsel's desire to be reappointed to the New Jersey Holocaust Education Commission.
*453 The court first applies the two factors explicitly discussed in DeNike: timing and the existence of a financial relationship. There is clearly no financial relationship or related issues present here, so the court finds that factor is not implicated.
With regard to the timing of the alleged events offered by plaintiffs as evidence of bias, it is noted that none of the events occurred while the judge was a sitting judge and plaintiffs agree the judge has acted honorably at all times since becoming a member of the judiciary. It is also noted that this appears to be an issue of first impression in New Jersey, that is, whether a judge can be disqualified for the appearance of personal bias based solely upon alleged events occurring prior to the judge becoming a member of the judiciary. Without case law directly on point, the court turns to the Canons and Rules of the Code of Judicial Conduct for guidance, and finds nothing expressly limiting the bias upon which a motion to recuse can be based to only alleged conduct while a member of the judiciary. Indeed, the notion of perceived bias stemming from pre-judicial conduct so as to require recusal permeates the Code of Judicial Conduct. Prior pre-judicial employment, social relationships, and former clients, among other reasons, are all grounds for disqualification based upon events or relationships occurring extra-judicially. Therefore, the court finds that the events which occurred and any bias that may have been developed prior to a judge becoming a member of the judiciary *209 can be a proper basis for recusal based upon the appearance of personal bias.
Next in regard to timing, the court analyzes the proximity in time of the events allegedly manifesting the judge's bias to the judge presiding over the matter. The alleged event closest in time occurred in 2013 which is five years before this matter came before the judge, when plaintiffs' counsel certified that an anonymous source told him the judge is alleged to have "made efforts to block" plaintiffs' counsel's appointment to the Holocaust Education Commission.[2] However, even assuming the reasonable, fully-informed person took the statement from an anonymous source as undeniably credible, as plaintiffs' counsel readily acknowledges, he and the judge were of different political parties. When plaintiffs' counsel was originally appointed to the Holocaust Education Commission, the governor of New Jersey was a member of the Democratic party, the same party as plaintiffs' counsel. In 2013 when plaintiffs' counsel applied for reappointment to the Holocaust Education Commission, the governor of New Jersey was a member of the Republican party, the same party as the judge when he served as county chairperson. The judge acknowledges that he made the recommendation of another individual, who was a member of the Republican party, to the governor's office in 2013 for appointment to the Holocaust Education Commission instead of plaintiffs' counsel. Far from exhibiting personal animus toward plaintiffs' counsel, for a county chairperson of either political party to support the appointment of a member of the other party and not recommend the appointment of a member of their own party would be highly unusual. Moreover, as county chairperson, the judge recommended members of his party over members of the other party for similar appointments on many occasions, not just *210 in plaintiffs' counsel's case. Sometimes the governor took the *454 chairperson's recommendation, sometimes he did not, but the judge had no way of "blocking" any appointment the governor chose to make. There is no other evidence offered which may indicate the judge's motive in recommending someone over plaintiffs' counsel was personal animus, such as the judge lobbying for plaintiffs' counsel's removal from the Commission prior to the expiration of his term without cause. As such, the court finds that the reasonable, fully-informed person would likely see the judge's conduct in this regard as being born of a political, not personal, motive.
Next we turn to the statements attributed to the judge following the judge's campaign for public office in 2004. This information comes from two sources according to plaintiffs' counsel's certification. First, plaintiffs' counsel alleges that an anonymous source informed him that the judge held him personally responsible for the campaign attack ads and materials used in the 2004 campaign and that the judge contemplated taking legal action against him and others because of those materials. Second, plaintiffs' counsel alleges an individual who the judge formerly used as an expert witness informed him on several occasions of the personal animus the judge allegedly held against plaintiffs' counsel because of the aforementioned attack ads.
Turning first to the anonymous allegation, it is noted that there is no allegation that any legal action was ever taken against plaintiffs' counsel or anyone else by the judge. Plaintiffs' counsel has put forth this allegation based upon anonymous sources, without specificity as to time, date, location or context of such statements. As such, a reasonable, fully-informed person would likely view such allegations with at least some degree of skepticism. Further, these alleged events occurred some fourteen years ago, following the 2004 political campaign. However, even assuming such statements were true and had been made by a named witness providing sufficient detail about the statements so as to make them undeniably credible, the court finds that a reasonable, *211 fully-informed person would not view statements from fourteen years prior as evidence of a present personal bias against plaintiffs' counsel so as to affect the judge's impartiality.
Similarly, the statements attributed to the judge and made to the former expert witness following the 2004 campaign, although allegedly made by a named individual, lack specific detail, such as the substance of the actual statements, where the statements were made, in what context the events were discussed and similar information making their credibility at least somewhat suspect to a reasonable, fully-informed person. However, as with the anonymously sourced statements, even assuming they were wholly credible and true, the statements are so remote in time to the present that a reasonable, fully-informed person would not be likely to view such statements as evidence of a present personal bias against plaintiffs' counsel so as to affect the judge's impartiality.
Most often, the acts or statements forming the basis for recusal are far closer in time to the motion than in this case. Besides the New Jersey Supreme Court's comments in DeNike regarding the proximity of the conduct alleged to provide the appearance of partiality to a present matter before a judge, the court finds support for consideration of proximity outside this jurisdiction. In Davis v. Board of Commissioners, 517 F.2d 1044 (5th Cir. 1975), the court there had the opportunity to consider a recusal issue under 28 U.S.C. § 455(a), which sets forth a rule and a standard similar to the one involved here:
*455 "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."
There the court found, when the basis for recusal is an alleged personal bias toward counsel, as opposed to the party, the bias demonstrated to justify disqualification must be of a "continuous and 'personal' nature over and above mere bias against a lawyer because of his conduct." Davis, 517 F.2d at 1051. However, rather than adopt the demonstration of a continuous bias as a threshold issue, the court here adopts the presence or absence of evidence of *212 a continuous bias as an important, but not determinative, factor to be considered in assessing whether a reasonable, fully-informed person would have doubts about the judge's impartiality. In other words, evidence of presence of an existing, continuous bias would weigh heavily in favor of a reasonable, fully-informed person having doubts about the judge's impartiality, whereas the absence of evidence of an existing, continuous bias, as in this case, weighs heavily against a reasonable, fully-informed person having doubts about the judge's impartiality.
Perhaps recognizing that the evidence of alleged personal bias was indeed remote in time to the present matter, at oral argument, plaintiffs' counsel offered, and the court accepted, for consideration a new exhibit consisting of the screenshot of a partial text message chat between two elected officials in Voorhees, one being the son of the principal member of plaintiff Racetrack Supermarket, LLC, who serves as the current deputy mayor, and the other being someone plaintiffs' counsel describes as a political ally and friend of the judge. There is no date on the screenshot; however, plaintiffs' counsel represented the messages were sent during the weekend of September 29, 2018, which is the weekend before oral argument was held. The judge is not a participant in the chat, had never seen or had any knowledge about the messages or chat before the hearing on this motion, had not even spoken about the subject matter of the message with anyone, nor had he spoken to the chat participants about the message. The message was not sent at the judge's behest or on his behalf. The message therefore does not impact upon this analysis. The text chat says nothing about, and therefore has no bearing on, the judge's present state of mind. Under these facts, that two individuals not involved in this case exchanged texts referring to events which may have happened fourteen years ago is not evidence that a reasonable, fully-informed person would likely find to be indicative of a present personal bias of the judge that would affect his impartiality.
*213 Where, as here, a judge's recusal is sought due to an appearance of impropriety based on claims of personal bias, it is also reasonable to examine and consider, where available, any prior history of actual dealings between the parties, especially when bias claims are based on alleged statements and not based upon alleged overt hostile action, such as prior litigation between counsel and the judge, or direct communication of animus by the judge to counsel. In other words, the court finds how the parties have conducted themselves in any prior personal or professional dealings with each other relevant in determining how a reasonable, fully-informed person would view the judge's ability to be impartial.
In the instant case, there have been prior interactions between plaintiffs' counsel and the judge when the judge was a practicing attorney, as well as between plaintiff's counsel's law firm in a prior matter over which the judge presided.
*456 Plaintiffs' counsel indicated he has no recollection, one way or the other, about his interaction with the judge on the matter taking place when the judge was a practicing attorney. In that matter, which took place within one year before the judge joined the judiciary, the judge recalls plaintiffs' counsel and the judge represented the buyer and seller respectively in a business transaction and that all dealings with each other were professional and civil. The judge recalls neither party exhibiting animosity during the matter with all dealings being cordial and professional. Had there been conduct indicative of a present and continuous bias or animosity, it is reasonable to assume plaintiffs' counsel very likely would have remembered that interaction and included it in support of the motion, especially given its close proximity to this case coming before the judge. Plaintiffs' counsel did admit at oral argument that there has never been a cross word between him and the judge in all their dealings with each other.
In March 2017, plaintiffs' counsel's firm appeared before the judge in a different matter. Appearing for plaintiffs' counsel's firm was the other named partner in the firm. This is the same named *214 partner whose sister ran against the judge for election in 2012. Plaintiffs' counsel admitted that the judge acted fairly and impartially at all times in his dealings with plaintiffs' counsel's firm. In fact, the parties appeared for what was to have been a trial and the judge conducted a settlement conference resulting in the judge's recommended resolution being adopted by plaintiffs' counsel's firm's client upon the recommendation of plaintiffs' counsel's partner.[3]
The court further notes that these two specific instances of personal interaction between the judge and plaintiffs' counsel or his firm are much closer in time to the present matter than any of the alleged statements or acts attributed to the judge by plaintiffs in their motion.
Lastly, it is noted that plaintiffs' counsel makes reference to longstanding personal animus "between plaintiffs, plaintiffs' counsel" and the judge in the motion for recusal. Any personal animus plaintiffs' counsel or plaintiff may have toward the judge is irrelevant to a determination of this motion. Only perception by a reasonable, fully-informed person of any personal animus by the judge toward plaintiff or plaintiffs' counsel is relevant, to the extent that it would affect the judge's impartiality. To consider a party's own animus, or that of their counsel, would have the undesirable effect of handing over to parties and their counsel the ability to disqualify judges based wholly upon whether they have animus toward the judge. Similarly, consideration of whether a *215 party or their counsel may have ever personally attacked the judge before or after he became a member of the judiciary as a factor in deciding motions for recusal would have the same undesirable effect. "The weight of authority is against compelling recusal merely by attacking a judge." *457 United States v. Eisenberg, 734 F. Supp. 1137 (D.N.J. 1990). Consideration of what the parties or their counsel think about the judge or whether either of them have ever attacked the judge at any time would result in prohibited judge-shopping being sanctioned.
b. Appearance of personal bias as it relates to plaintiff
Plaintiffs also allege that a reasonable, fully-informed person would likely have doubts about the judge's impartiality towards plaintiff Racetrack Supermarket LLC because its principal member is the father of an elected official in Voorhees against whom the judge, in his prior capacity as county chairperson, was in a position to fund and support a political campaign. Plaintiff Racetrack Supermarket LLC's principal member's son is not a member of plaintiff LLC, is not a party to this case, is not a witness in this matter, nor is he someone the judge had ever ran against personally in any political campaign.[4]
The judge has never met or spoken to plaintiff's principal's son who is now Voorhees Township's deputy mayor. Nor has the judge ever met or spoken to plaintiff's principal. The judge does not know either of them personally, has never had any dealings with either of them personally or professionally and has never represented any client adverse to either individual. In short, there is no evidence of any history of personal animus whatsoever between the judge and plaintiff or anyone related to plaintiffs' principal member.
Certainly, the judge, as county chairperson of the Republican party, was in a position to, and did, support the campaign of the *216 Republican candidates who ran for election against the plaintiffs' principal member's son. However, such support was not the product of, nor did it create, personal animus toward the principal's son, but rather was the judge, as county chairperson, doing what any competent county chairperson would do in similar circumstances regardless of who the candidate was. At oral argument, it was pointed out that every one of the defendant elected officials in this matter are, like plaintiff LLC's principal member's son, members of the Democratic party against whom the judge was in a similar position to fund and support campaigns. When asked at oral argument if, under plaintiffs' theory, the judge would have a similar conflict with those defendants, plaintiffs' counsel indicated the judge would not, arguing that the judge's residency in and prior personal involvement with Voorhees politics distinguished the plaintiff from the defendants. However, judges presiding over matters which involve the municipality in which they reside has been held not to be proper grounds for disqualification. Homann v. Torchinsky, 296 N.J. Super. 326, 686 A.2d 1226 (App. Div. 1997).
Based upon consideration of all factors, the court finds that a reasonable, fully-informed person would not have doubts about the judge's impartiality in this matter. The motion for recusal is denied.

That plaintiff does not rely upon the existence of an actual personal bias or prejudice does not remove the issue from the court's consideration, because judges' obligations to disqualify themselves exist in every case sua sponte if they harbor personal bias or prejudice toward a party or a party's lawyer under Rule 3.17(B)(1) of the Code of Judicial Conduct. It is recognized that there are two standards through which disqualification under the Rule can be implicated: an objective standard and a subjective standard. The subjective standard is how the judge himself actually feels. The objective standard is how a reasonable, fully-informed person would view the judge's ability to be impartial under DeNike. Plaintiffs here rely exclusively upon that objective standard. Nevertheless, the court feels compelled to comment upon the subjective standard, as either could be grounds for disqualification. In regard to the subjective standard, it has been said that the judge ordinarily has readiest insight into his or her own mind. Magill v. Casel, 238 N.J. Super 57, 63, 568 A.2d 1221 (App. Div. 1990). "When one's own capacity and willingness to be fair to a party or a lawyer is challenged, it requires a conscious exercise of good will and mature judgment to decide the challenge. But it is the capacity to exercise good will and mature judgment in difficult circumstances that qualifies one to act as a judge at all. It must be assumed that a judge will bring that capacity to bear on a motion to recuse himself." Id. at 64, 568 A.2d 1221. As such, applying the subjective standard, the court has no actual personal bias or prejudice toward any party or party's lawyer which would affect the court's impartiality in this matter.

Unlike state senators who can block a gubernatorial nomination from going forward by exercising courtesy over any nominee from their district or from the county in which they reside, county chairpersons of political committees have no authority to "block" gubernatorial appointments of individuals to boards, commissions and authorities.

Plaintiffs' counsel asserts that the appearance by his firm before the judge previously in another matter does not constitute waiver or estoppel to bring the motion in this action. The court agrees. However, the court finds that the judge's conduct in that prior matter is nevertheless relevant in determining whether a reasonable, fully-informed person would have doubts about the judge's impartiality in the current matter. This is so, even where plaintiffs' counsel himself did not appear, for two reasons. First, plaintiffs' counsel is a named partner in the firm, and the judge was aware of that when he presided over the prior matter. Second, plaintiffs' counsel's partner appeared, the same partner whose sister ran against plaintiff for election in 2012, which fact plaintiffs' counsel relies upon in support of the current motion.

Making note of this is not to suggest that, if plaintiff LLC's principal member's son fit into any one or more of these categories, the motion for recusal should be granted.