# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on July 22, 2016

## ARRON WESLEY FRAZIER v. LEE ANNE FRAZIER

**Appeal from the Circuit Court for Rhea County**
**No. 2015-CV-317     Justin C. Angel, Judge**

_____

### No. E2016-01476-COA-T10B-CV-FILED-AUGUST 26, 2016

_____

This is an interlocutory appeal as of right, pursuant to Rule 10B of the Rules of the Supreme Court of Tennessee, from the denial of a motion for recusal filed by Lee Anne Frazier (Wife) in the parties= divorce proceedings. Having reviewed the petition for recusal appeal filed by Wife, as well as the answer in opposition filed by Arron Wesley Frazier (Husband), we conclude that the Trial Court should have granted the motion because the unique circumstances of this case create an appearance of bias on the part of the Trial Court Judge that required his recusal. We therefore reverse the order of the Trial Court and remand the case for reassignment to a different judge.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right;**
**Judgment of the Circuit Court Reversed; Case Remanded for Further Proceedings**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which RICHARD H. DINKINS and ARNOLD B. GOLDIN, JJ., joined.

Mark Randall Sellers, Cleveland, Tennessee, for the appellant, Lee Anne Frazier.

Howard L. Upchurch, Pikeville, Tennessee, for the appellee, Arron Wesley Frazier.

## OPINION

### I.

Husband and Wife are both residents of Bradley County, Tennessee. Neither have ever been residents of Rhea County, Tennessee. At some point between September 5, 2015, and September 25, 2015, the parties met at the Law Offices of Howard Upchurch, counsel for Husband in the proceedings below, in order to discuss the preparation of documents necessary to dissolve their marriage to one another. A letter from Mr. Upchurch to Husband, memorializing the substance of that meeting was attached to

Wife's petition filed in this Court. That letter states, in pertinent part, as follows:

> My understanding is that you and your wife have reached an agreement regarding the issues associated with your children . . . and the division of your assets and obligations. I will, therefore, prepare a Marital Dissolution Agreement and Permanent Parenting Plan in accordance with your resolution[.]
>
> *       *       *
>
> I suggested to you that we file this divorce action in Rhea County or a county within the Twelfth Judicial District. There may be some sensitivity associated with this case in light of your wife's employment as a teacher for the Bradley County Board of Education. In addition, the procedures followed by the Circuit Judges in the Twelfth Judicial District are somewhat more relaxed than those in other circuits. One Judge will actually hear uncontested divorces in his office here in Pikeville with one or both parties present, without the necessity of a formal court appearance.
>
> In the event this letter accurately sets forth the agreement reached between you and your wife, both of you should sign the letter above your respective names on the signature lines below and return the letter to my office immediately via email or telephone facsimile. I will then prepare the formal documents including the Marital Dissolution Agreement and Permanent Parenting Plan referenced above.

The letter included with the petition filed in this Court is not signed by either party.

On September 30, 2015, Mr. Upchurch, as counsel for Husband, filed a Complaint for Divorce in the Circuit Court for Rhea County. The Complaint acknowledged that both parties are residents of Bradley County, but stated that "[t]he parties have or will stipulate that Rhea County, Tennessee possesses both venue and jurisdiction to entertain this divorce action." Contemporaneous with the filing of the Complaint, Mr. Upchurch filed a Marital Dissolution Agreement (MDA), proposed Permanent Parenting Plan (PPP), and an Answer and Acknowledgment of Process and Receipt of Complaint executed by Wife on September 25, 2015. In the sworn Answer executed by Wife, she stated that she had received a copy of the Complaint, that she had not been "counseled

nor advised" of her "legal rights existing under the divorce and domestic relations statutes and laws of the State of Tennessee" by Mr. Upchurch, and that she "consent[ed] to the filing and prosecution of this divorce in the Circuit Court of Rhea County, Tennessee, and waiv[ed] all venue and jurisdiction issues so as to enable the Circuit Court of Rhea County, Tennessee to hear this matter and enter a Final Decree of Divorce in this cause." This document also stated that Wife "acknowledge[d] that this matter may be heard without her presence and presented to the Court without her presence, without notice of any and all future hearings in this matter being provided to her."

Wife subsequently retained counsel to represent her in the proceedings below. On November 6, 2015, her attorney filed a motion which sought to retract her agreement to the MDA and PPP, as well as her waiver of venue, and requested that the case be transferred to the Circuit Court for Bradley County, Tennessee, the home residence of both parties. Counsel asserted in the motion that Wife had signed the PPP without the benefit of counsel and that it was "no longer in the best interests of the minor children." Counsel further noted that the PPP had not yet been approved by the Trial Court and therefore had no legal effect. Counsel further alleged that the MDA did not set out a "full agreement of the parties" as it did not divide the parties' personal property or provide any formula or provision "as to how such would be divided." Circuit Court Judge Justin C. Angel, the Trial Court Judge assigned to hear the case in Rhea County, denied the request to transfer the case to Bradley County and set for hearing on February 8, 2016, Wife's requests to retract the PPP and MDA. Judge Angel's order was entered on February 8, 2016, *nunc pro tunc* January 14, 2016.

In early May of 2016, counsel for Wife filed a motion pursuant to Rule 10B, section 1 of the Rules of the Supreme Court of Tennessee, requesting that Judge Angel recuse himself from the parties' divorce proceedings on grounds that Judge Angel had, in violation of Canon 3 of the Code of Judicial Conduct, engaged in his personal and extrajudicial activities in such a way "that would appear to a reasonable person to undermine the Judge=s independence, integrity or impartiality." The motion asserted that Wife had become aware through "social media, internet postings and/or internet history that this Judge was formerly an employee of Howard Upchurch, the attorney of record for [Husband]," and that "a close personal relationship has continued between this Judge and counsel for [Husband], Howard Upchurch, since leaving the employment of Mr. Upchurch after being elected to the office of Judge of the Circuit Court." In support of the motion, an affidavit from Wife was filed which stated in its entirety as follows:

> 1. My name is Lee Anne Frazier. I am more than 18 years of age. I am the Defendant in the above-referenced matter.
>
> 2. On April 11, 2016, without the knowledge of my lawyer, I

was doing some research as to the prior employment of Judge Justin Angel with Howard Upchurch. Again, without the knowledge of my lawyer, I discovered that Judge Justin Angel has an Instagram account on the internet. I executed a command requesting to "follow" Judge Angel=s Instagram account which request was immediately accepted. Thereupon, I began scrolling through pictures on this account and discovered the two (2) pictures attached (see Exhibit A) of what appears to be Judge Angel and Howard Upchurch. Upon further inquiry as to the date of these pictures and upon seeing the date of September 5, 2015 at the bottom of one of the pictures, I researched Tennessee Volunteer football events and found that the University of Tennessee football team played at Nashville, Tennessee in Titan Stadium against Bowling Green on September 5, 2015. I further discovered upon research that alcohol was served at this event and that the color of the seats are as shown in the picture of Mr. Upchurch and Judge Angel (See attached Exhibit B). Within a few hours after I discovered and "screenshotted" Exhibits A and B, said pictures had been deleted from the Instagram page of Judge Angel.

3. Within 2 weeks of September 5, 2015, the apparent date these pictures were taken, I met with my husband in Mr. Upchurch's office which meeting was memorialized by a letter from Mr. Upchurch dated September 25, 2015.

4. On or about September 30, 2015, my case was filed in the Circuit Court of Rhea County before Judge Justin Angel.

5. I believe the activities depicted in these pictures would appear to a reasonable person to undermine the Judge's independence, integrity or impartiality.

(Underlining in original.) Attached to the affidavit were two photographs dated September 5, 2015, from an Instagram account belonging to "hon_jcangel." The first photograph is of Judge Angel, Howard Upchurch and two other individuals near the concession stand of what appears to be a University of Tennessee Volunteers football event. The second photograph is of Judge Angel and Howard Upchurch having beverages, which appear to be beers, in stadium seating at what appears to be the same event. The second photograph is the kind of self-portrait taken with a cellular telephone

4

commonly referred to as a "selfie."[1]

On June 2, 2016, counsel for Wife filed an amended motion pursuant to Rule 10B, section 1 of the Rules of the Supreme Court of Tennessee, which was identical in substance to the first motion, but included an allegation, required by section 1.01 of the rule, that "the filing of this Motion is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." On that same date, counsel for Wife sent a letter to Judge Angel and Mr. Upchurch stating in pertinent part as follows:

> This will confirm the phone conversation between Judge Angel, Mr. Upchurch and me on June 2, 2016. It is my understanding that Judge Angel initiated this phone conference to make counsel for Ms. Frazier aware that a similar Motion for Recusal had been previously filed in a criminal matter in the 12th Judicial District and that likewise the Court, after giving some of the reasons, stated that said Motion was denied. Further, the Court stated that because of various procedural defects and other reasons in the Motion filed in criminal court that one of the counsel for the State of Tennessee had been reported to the Board of Professional Responsibility, as was the Judge's duty in his opinion. The Court wanted to make counsel for Ms. Frazier aware of these matters to determine whether or not Ms. Frazier wished to proceed with her Motion.
>
> In response, I informed the Court that as far as I knew Ms. Frazier intended to stand by her Motion, that no argument of the Motion is required, and that I would let Ms. Frazier know of the circumstances of this conversation initiated by this Court. Further, I indicated to the Court that because of the timing of this Motion and the pending trial date of June 9, 2016, that even if the Court denied the Motion today by written Order filed with the Court, the time for an interlocutory appeal would be running at the time of the present trial date and therefore this matter should be continued. The Court and Mr. Upchurch agreed that the case

---

[1] "A 'selfie' is a 'photograph that a person takes of himself . . . with a cell phone for posting on social media.'" ***Edwards v. State***, — S.W.3d —, 2016 WL 3401748, at *4 n.6 (Tex. App., filed June 26, 2016) (quoting *Webster's New World College Dictionary* (5th ed. 2014)).

should be continued due to these circumstances and further that if Ms. Frazier decided not to appeal, that [counsel for the parties] would immediately request the Court to set a new trial date. To this I agreed.

On July 12, 2016, Judge Angel entered a written order denying Wife's motion for recusal. In that order, Judge Angel "acknowledge[d] the applicable code of conduct rules" cited in the motion, but was "adamant that [his] conduct has never violated any rule of judicial conduct." The order went on to explain:

> The Court is maintaining independence, integrity, and impartially [sic]. The Court also has avoided any impropriety or the appearance thereof. The Court has refrained from presiding over any of Mr. Upchurch's contested civil matters since elected to the bench on August 7, 2014, for a period of one year, due to the fact that I was an associate attorney in Mr. Upchurch's law office prior to my election. . . . I was never a partner in Mr. Upchurch's law office. We have no financial or business relationship.
>
> Since that one year period, the Court has presided over several contested civil matters litigated by Mr. Upchurch. All local attorneys are well aware that I was an associate attorney at Mr. Upchurch's office and that I occasionally socialize with Mr. Upchurch and other members of the bar. No one has ever requested recusal in any of those civil matters. I believe this is because the members of the bar know that I am fair and impartial. All of these matters have required the Court to be the sole trier of fact. Mr. Upchurch=s clients have prevailed in some of those matters, and lost in some of those matters. The Court doesn't make its rulings and decisions based upon which attorneys are involved in a case. The Court doesn't neglect or violate its Oath of Office for anyone.
>
> *    *    *
>
> The 12th Judicial District has a long history of being a close knit bar with many members of the bench and bar maintaining friendships. This is evidenced by our annual bar dinner and many other instances. Even at one of our annual

Judicial Conferences, there are numerous Bar/Bench joint social events. There is nothing ethically wrong with socializing with attorneys who practice before the Court. Camaraderie is encouraged and [is] healthy for the bar.

The order then discusses the photographs relied on by Wife in her affidavit as having been two pictures "on a private social media account" where the Judge "manage[s] who views [his] content." The order expressly states that they were "not public photos." The order then curiously describes one of the photographs as depicting "an impromptu birthday lunch for my three year old son." The order describes this photograph as having been "from October of 2015." No such photograph was relied on by Wife in this case. The order then correctly describes the second photograph as being "of me and Mr. Upchurch at a football game together in September 2015." The order "stresse[d] that the sporadic socialization with attorneys who appear before me does not violate any part of the Judicial Code of Conduct or create an appearance of impropriety."

Wife timely filed her petition for recusal appeal in this Court pursuant to Rule 10B. Pursuant to Section 2.05 of Rule 10B, this Court directed counsel for Husband to file an Answer to the Petition. Having reviewed Wife's petition and supporting documents submitted with the petition, together with Husband's answer, we conclude that additional briefing and oral argument are unnecessary. As such, we proceed to decide this appeal in accordance with sections 2.05 and 2.06 of Rule 10B.

## II.

We note at the outset that this is not a case in which recusal was sought or required on the basis of actual personal bias or prejudice on the part of the Judge. Without question, "[t]he right to a fair trial before an impartial tribunal is a fundamental constitutional right." *Bean v. Bailey*, 280 S.W.3d 798, 803 (Tenn. 2009) (quoting *State v. Austin*, 87 S.W.3d 447, 470 (Tenn. 2002)). Article VI, section 11 of the Tennessee Constitution states,

> No Judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected with him by affinity or consanguinity, within such degrees as may be prescribed by law, or in which he may have been of counsel, or in which he may have presided in any inferior Court, except by consent of all the parties.

This constitutional right "is intended 'to guard against the prejudgment of the rights of

litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor.' " *Id.* (quoting *Austin*, 87 S.W.3d at 470). By statute, the Legislature has delineated those circumstances in which recusal is constitutionally required. *See* Tenn. Code Ann. § 17-2-101.

In this case, recusal was sought on the basis that the Judge's personal and extrajudicial activities with Mr. Upchurch, as reflected on social media, created the appearance of bias or prejudice on the part of the Judge. "[P]reservation of the public=s confidence in judicial neutrality requires not only that the judge be impartial in fact, but also that the judge be perceived to be impartial." *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998); *see also Offutt v. United States*, 348 U.S. 11, 14 (1954) (holding that "justice must satisfy the appearance of justice"). As such, Rule 2.11(A) of the Code of Judicial Conduct as set forth in Rule 10 of the Rules of the Supreme Court of Tennessee requires a judge to recuse himself or herself "in any proceeding in which the judge's impartiality might reasonably be questioned." In other words, even when a judge subjectively believes that he or she can hear a case fairly and impartially, the judge still must recuse himself or herself " 'when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.' " *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 564-65 (Tenn. 2001) (quoting *Alley v. State*, 882 S.W.2d 810, 820 (Tenn. Crim. App. 1994)); *see also Smith v. State*, 357 S.W.3d 322, 341 (Tenn. 2011) (quoting *Bean*, 280 S.W.3d at 805). This objective standard is necessary because "the appearance of bias is as injurious to the integrity of the judicial system as actual bias." *Davis*, 38 S.W.3d at 565; *see also Smith*, 357 S.W.3d at 340.

Mr. Upchurch, in his Answer to the Petition, focuses his argument on the fact that he and Judge Angel are former colleagues and friends, and that such a relationship, without more, did not warrant the recusal of Judge Angel. Specifically, Mr. Upchurch asserts in his Answer "[t]hat this action was randomly assigned to Circuit Judge Justin C. Angel following the filing of the Complaint for Divorce," that neither Husband nor his attorney "controlled or were otherwise involved in the assignment of this action to Judge Angel," and that the recusal motion was not filed until the parties were "within two weeks of the scheduled trial date" and there had been "two appearances before Judge Angel in furtherance of Motions" and "participation in mediation by the parties." Mr. Upchurch then explains that he is "friends" with all "trial level jurists in the Twelfth Judicial District," having practiced there for thirty-four years. He states that "[s]ince his election as Circuit Court Judge, the undersigned and Judge Angel have seen each other at one University of Tennessee football game ᴄ the opening game for the 2015 season in Nashville." Mr. Upchurch then argues that "in the event socializing between a jurist and an attorney mandates the recusal of the jurist, thousands of cases across this State will

[be] subject to scrutiny due to de minimis and casual interaction between jurist and attorneys and the assignment of judges from other districts to conclude such cases."

We agree with Mr. Upchurch that "[t]he mere existence of a friendship between a judge and an attorney is not sufficient, standing alone, to mandate recusal." *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008); *see also State v. Madden*, No. M2012-02473-CCA-R3-CD, 2014 WL 931031, at *7 (Tenn. Crim. App., filed Mar. 11, 2014) ("Simply establishing that a trial judge is acquainted with a lawyer or other person connected to a case does not, without more, suffice to establish an abuse of discretion in the denial of a recusal motion."). However, this case is not simply about the friendship that exists between counsel and Judge Angel, but rather whether the depiction of that friendship on social media, as managed by Judge Angel on his Instagram account, would lead "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge," to "find a reasonable basis for questioning the judge's impartiality." *Bean*, 280 S.W.3d at 805; *Davis*, 38 S.W.3d at 564.

"The Code of Judicial Conduct does not require judges to remain isolated from other members of the bar and from the community." *Cannon*, 254 S.W.3d at 308. However, "[w]hen engaging in physical and online contact with members of the community," a judge "must at all times remain conscious of the solemn duties [he or she] may later be called upon to perform." *Madden*, 2014 WL 931031, at *8. In an effort to help Tennessee's judges navigate the "unprecedented challenges" created by the present "[s]trides in technology" in the realm of online social media, *State v. Forguson*, No. M2013-00257-CCA-R3-CD, 2014 WL 631246, at *14 (Tenn. Crim. App., filed Feb. 18, 2014) (Witt, J., concurring), Tennessee's Judicial Ethics Committee ("JEC") issued an advisory opinion in 2012, before Judge Angel was elected to the bench, addressing "whether judges may utilize [online] social media" and, if so, "the extent to which they may participate." Tennessee Judicial Ethics Advisory Opinion, No. 12-01 (Oct. 23, 2012).[2] The JEC concluded that several provisions of the Code of Judicial Conduct were relevant to these inquiries, including Rule 2.11. *See id.* Specifically, the JEC commented:

> Rule 2.11 sets out the procedures for disqualification in situations where the judge has a conflict or there is an appearance that this is the case. Of particular relevance to a judge's use of social media are subsections (A)(1) and (A)(5), providing that the impartiality of a judge might be reasonably

---

[2] Judicial ethics opinions are simply a "body of principles and objectives upon which judges can rely for guidance." Tenn. Sup. Ct. R. 10A.6.9 § 26.6(h). They are not binding upon the courts. *See, e.g.*, *Wells v. State*, No. M2002-01303-CCA-R3-PC, 2003 WL 21713423, at *4 (Tenn. Crim. App., filed July 23, 2003).

questioned if it appears the judge "has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding"; or, the judge "has made a public statement, other than in a court proceeding, judicial decision, or opinion, that commits or appears to commit the judge to reach a particular result or rule in a particular way in the proceeding or controversy."

*Id.* The JEC noted that the "[j]udicial ethics committees of several states ha[d] addressed [the] question, with the majority concluding that judges may utilize social networking sites, but must do so with caution." *Id.* Based upon a review of the conclusions reached by similar committees in other states, the JEC concluded that, "while judges may participate in social media, they must do so with caution and with the expectation that their use of the media likely will be scrutinized [for] various reasons by others." *Id.* The JEC noted that "[b]ecause of the constant changes in social media, this committee cannot be specific as to allowable or prohibited activity, but our review, as set out in this opinion, of the various approaches taken by other states to this area makes clear that judges must be constantly aware of ethical implications as they participate in social media." *Id.* The JEC made clear that "judges must decide whether the benefits and utility of participating in social media justify the attendant risks." *Id.*

At the time the JEC issued this opinion, the social media platform known as Instagram, which is at the heart of this case, was in its infancy. *See* Instagram, Press News, https://www.instagram.com/press (last visited Aug. 15, 2016) (noting that Instagram launched on October 6, 2010).[3] While nothing in the record provided to this Court establishes or explains how an Instagram account operates, the company's website describes the service as a "fun and quirky way to share your life with friends through a series of pictures." *Id.* at FAQ, https://www.instagram.com/about/faq (last visited Aug. 15, 2016); *see also* ***Crapps v. State***, 180 So.3d 1125, 1127 (Fla. Dist. Ct. App. 2015) (noting testimony describing Instagram as "a form of social media" where "'you post pictures [and] your friends get to see it'"). The Instagram website explains the level of privacy available to an account as follows:

We have adopted a follower model that means if you=re "public" on Instagram, anyone can subscribe to follow your

---

[3] Instagram was so new in 2012 that it was not even mentioned by the JEC in its advisory opinion, even though other social media platforms available at the time were mentioned. Tennessee Judicial Ethics Advisory Opinion, No. 12-01 (Oct. 23, 2012) (making reference only to the social media platforms known as Facebook, Twitter, LinkedIn, and MySpace).

photos. We do, however, have a special private option. In this mode, a user can make sure he/she must approve all follow requests before they go through.

\* \* \*

All photos are public by default which means they are visible to anyone using Instagram or on the instagram.com website. If you choose to make your account private, then only people who follow you on Instagram will be able to see your photos.

*Id.* at FAQ, https://www.instagram.com/about/faq (last visited Aug. 15, 2016).

It is clear from the record in this case that Judge Angel maintained a private account on Instagram which required him to approve all "follow" requests before the photographs posted by him on the account could be seen. It is also clear from the record that the photographs of the social interactions between Judge Angel and Mr. Upchurch, taken from Judge Angel's Instagram account and relied on in support of the motion seeking his recusal, depict a closeness to their friendship that undermined Wife's confidence in Judge Angel's ability to remain independent and impartial, as stated by her in the affidavit filed in support of her motion.[4] While we do not suggest that Judge Angel is unable to put his personal friendship with Mr. Upchurch aside in order to fulfill his role as an impartial judge, we do conclude that the photographs Judge Angel allowed Wife to view on his account, by accepting her "follow" request, would lead "a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge," to "find a reasonable basis for questioning the judge's impartiality." *Bean*, 280 S.W.3d at 805;

---

[4]This is precisely the danger that was alluded to by Judge Witt of the Court of Criminal Appeals, when he observed in his concurring opinion in *Forguson*,

> [O]ne cannot reasonably expect a trial judge living in a small community to recuse himself or herself because he or she is acquainted with a litigant or a key witness. When a judge shares a [social media] "friendship" with such a person, however, the aggrieved party may be able to show that this 'social media' relationship is more active, regular, or intimate than mere incidental community propinquity might suggest. . . . Certainly, I could envision a properly presented Rule 10B motion that, upon proof, evinces at least an appearance of impropriety.

*Forguson*, 2014 WL 631246, at \*14 (Witt, J., concurring).

11

*Davis*, 38 S.W.3d at 564. *Cf. Madden*, 2014 WL 931031, at \*2 n.1, 7-8 (holding that trial judge did not abuse his discretion in denying a motion seeking his recusal based solely upon his social media "friendship" with one of the State's witnesses where judge "unfriended" the witness before trial); *Forguson*, 2014 WL 631246, at \*13 (determining that trial judge's social media "friendship" with confidential informant witness did not require recusal because "[t]he record in this case is not developed as to the length of the [online] relationship between the trial court and the confidential informant, the extent of their internet interaction or the nature of the interactions"). The Court notes that the effect of Judge Angel's action in accepting Wife's "follow" request was to initiate an *ex parte* online communication with a litigant whose case was then pending before him, which is expressly prohibited by Rule 2.9(A) of the Code of Judicial Conduct.[5]

## III.

Accordingly, having determined that the record provided by Wife demonstrates that the Trial Court Judge abused his discretion in denying the motion seeking his recusal, we reverse and remand with directions that this case be assigned to a different judge in the 12th Judicial District. We also strongly suggest that Judge Angel's denial of Wife's request to revoke her waiver of venue and have this case transferred to Bradley County, where she resides, be revisited by the judge to whom this case will be assigned. Costs on appeal are assessed against the appellee, Arron Wesley Frazier, for which execution may issue, if necessary.

_____
CHARLES D. SUSANO, JR., JUDGE

---

[5]As Judge McMullen of the Tennessee Court of Criminal Appeals commented in her concurring opinion in *Madden*, "the better practice" for judges, in order to "avoid passive receipt of unwanted online communications during trial," is to delete or "defriend" contacts on social media who are or might be involved in litigation before the judge. *Madden*, 2014 WL 931031, at \*13 (McMullen, J., concurring).